(No. 45906.

MORGAN CAB COMPANY *et al.*, Appellants, v. THE INDUSTRIAL COMMISSION *et al.*—(Nelson Anderson, Appellee.)

*Opinion filed Jan. 30, 1975.—Rehearing denied March 24, 1975.*

Discipio & De Carlo, of Chicago (Sidney Z. Karasik, of counsel), for appellants.

James V. Tufano, of Chicago (William J. Harte, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

This is an appeal under our Rule 302(a) (Ill. Rev. Stat. 1969, ch. 110A, par. 302(a)) by the Morgan Cab Company from a judgment of the circuit court of Cook County, which affirmed a decision of the Industrial Commission holding that Nelson Anderson had established his claim under the provisions of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.8(a)(b)(c)).

The only question presented is whether the claimant was an employee of the Morgan Cab Company (hereafter, Morgan).

On November 23, 1970, at about 8:30 p.m., Nelson Anderson, whose claim was that he was an employee of Morgan, was driving his taxi south on Cottage Grove Avenue in Chicago. As he approached the corner of 49th Street a man flagged down his cab. Anderson pulled over and the man sat halfway in the cab leaving the door open. When Anderson turned around to ask him his destination he noticed a second man approaching his cab from behind

some parked cars. At first Anderson thought the man was carrying a pipe but then saw he was carrying a shotgun. When Anderson tried to close the shield that separates the driver's area from the passenger section of the cab he was shot in the left hand. Anderson managed to turn around and put his foot on the accelerator, which caused the two men to jump from the cab. As a result of the shotgun blast Anderson lost his left little finger and required a number of operations on his left hand, including surgery for a bone graft and for the insertion of steel pins. He was unable to continue his work as a cab driver because of his disability. The nature and extent of his injuries are not in dispute.

Morgan contends the decision of the Industrial Commission holding that the claimant was its employee was error. It argues that the evidence showed him to be an independent contractor and thus not subject to the provisions of the Workmen's Compensation Act.

Morgan owns approximately 30 cabs. All cabs are painted alike and have the company's name and telephone number printed on their sides. The cabs are registered in James Morgan's name. Nelson Anderson testified that in March 1968 he was walking past the Morgan Cab Company when he noticed a sign which said "Drivers wanted." He went inside and talked with the owner, James Morgan, about employment. James Morgan asked him if he had previous experience driving a cab and a chauffeur's license. When he answered yes, James Morgan offered him a job after being assured by the claimant that he did not gamble or drink. James Morgan told him the terms under which the claimant would drive the cab. They were: the claimant was required to pay $12.50 a day, which had increased to $18 at the time of incident here, to operate the cab; he was to buy $2 worth of gas at the Morgan garage on turning in his cab so that the next driver would be able to begin his tour of duty; the claimant would keep all moneys from the fares and tips; Morgan would not withhold social security or State and Federal taxes from any moneys the

claimant would receive; the claimant would purchase all of the gasoline his driving would require; he had to pick up at least 10 passengers a day in response to calls from Morgan's radio dispatcher (a sign in the garage also stated that drivers were responsible for picking up 10 passengers a day in response to such calls); if the taxi's radio malfunctioned the claimant was to have it repaired at a company at 5400 South Kostner, regardless of his cab's location when trouble occurred; he would be required to bring his cab for servicing or for an inspection by a city inspector when notified by the dispatcher; although he could drive his cab anywhere in Chicago he was "encouraged" to stay on the south side because Morgan's business was dependent on the dispatcher calls which reached only that area and also because there were 25 cab stands in the area where fares might be picked up; if he was involved in an auto accident the claimant was to report it to Morgan's office; and Morgan was to provide needed oil, grease, repairs and tires.

The claimant testified all drivers worked a 12-hour shift and when one shift brought their cabs in to the garage the other shift took them out. The two drivers who shared the driving of a cab could agree upon the times of the shifts. However, if the drivers could not reach an agreement, one driver would pick up his cab at 5 o'clock in the afternoon and return it to the garage at 5 o'clock in the morning. Not all drivers drove on a shift basis. Some drivers leased cabs with an option to buy the cab, and other drivers worked on a part-time basis.

Anderson testified that James Morgan told him the company had the necessary workmen's compensation insurance to take care of everything when he visited him in the hospital. After the claimant was discharged from the hospital he went to the garage and asked James Morgan how he should go about filing claim for workmen's compensation. Morgan sent him to see a Mr. Daige, who was an insurance agent. Daige told the claimant to

complete claim forms and told him the insurance company would call him. After a month he called Daige, who arranged to meet with him. Anderson testified Daige offered him an undisclosed amount of money to settle his claim. Anderson refused the money and filed a claim with the Industrial Commission.

An arbitrator found the relationship of employer and employee existed between Morgan and the claimant on November 23, 1970. He found that the claimant had sustained accidental injuries arising out of and in the course of employment and entered an award for 27 weeks of compensation for temporary total disability, an award of 114 weeks for 60% permanent and complete loss of use of his left hand and $5,502.20 for medical, surgical and hospital expenses.

On review before the Industrial Commission, Mansfield Zinamon, the manager of the Morgan Cab Company, testified that a driver was not under obligation to answer calls from the dispatcher, even though there was a sign posted in the garage to that effect. On cross-examination he testified that he inspected the drivers each day to insure they were sober. If a driver was not sober Zinamon would not permit him to drive a cab. He said that he had authority to refuse to let a driver have a cab if there had been serious customer complaints against him and he exercised that authority on occasion. The witness said that he had also refused to let a driver have a cab because he had used "foul language" in the garage and that he had refused to let drivers take cabs because of other reasons. He admitted that he, too, had told the claimant after his injury that he believed the claimant was covered by the company's workmen's compensation insurance. Morgan made an offer of proof that the reason the company had secured the workmen's compensation insurance was because the city's commissioner of taxicabs would not issue a license for any cab, whether it was used as a leased cab or not, without a workmen's compensation policy being

issued to cover the cab's driver.

There is no inflexible rule applicable in all situations to determine whether one is an employee or has some other status. *O'Brien v. Industrial Com.*, 48 Ill.2d 304, 305.

In *Lawrence v. Industrial Com.*, 391 Ill. 80, where the issue was whether the claimant was an independent contractor or an employee, this court said:

"The existence of the master and servant relationship is primarily, in any given case, a question of ultimate fact, involving in its determination a conclusion derived from a consideration of all the evidentiary facts disclosed by the evidence, in connection with the application of principles of law to the consideration of the evidence. [Citations.]

The rule is well settled that it is the province of the Industrial Commission to draw reasonable inferences and conclusions from evidentiary facts, and the courts are not privileged to set aside the findings of the commission unless they are manifestly against the weight of the evidence. [Citations.]" 391 Ill. 80, 84.

(See also *Beletz v. Industrial Com.*, 42 Ill.2d 188, 192; *Wilhelm v. Industrial Com.*, 399 Ill. 80, 89.) And in *Greenberg v. Industrial Com.*, 23 Ill.2d 106, 108, it was said: " ' "If the undisputed facts permit an inference either way *** then the Commission alone is empowered to draw the inference and its decision as to the weight of the evidence will not be disturbed on review." ' "

No one factor may determine what the relationship is between parties in a given case. It may be necessary to consider a number of factors with evidentiary value, such as the right to control the manner in which the work is done, the method of payment, the right to discharge, the skill required in the work to be done, and who provides tools, materials, or equipment. Of these factors the right to

control the manner in which the work is done is the most important in determining the relationship. *Greenberg v. Industrial Com.*, 23 Ill.2d 106; *Henn v. Industrial Com.*, 3 Ill.2d 325; see also Weidner, *The Workmen's Compensation Act*, 1967 U. Ill. L.F. 21, 24-25.

It does not appear that this court has considered in a workmen's compensation case whether a taxi driver who drove a cab under circumstances similar to those here was to be considered an employee. There have been, however, decisions in other jurisdictions under resembling facts that have held the driver was an employee. In *Golosh v. Cherokee Cab Co.* (1970), 226 Ga. 636, 176 S.E.2d 925, the driver and the cab owner agreed to divide the fares equally. The court, after noting that the claimed employer had authority to tell the claimant when to begin and quit work and if he refused to obey instructions as to working hours he could discharge him or deny him further use of the cab, said that the cab company's having this right to control the claimant required a holding that he was an employee. In *Hannigan v. Goldfarb* (1958), 53 N.J. Super. 190, 147 A.2d 56, the cab driver paid $8 per 12-hour shift for the use of a cab. The driver kept all fares and tips and paid for all of his gasoline and oil. The court in holding for the claimant under the Workmen's Compensation Act rejected the cab owner's argument that the driver was not an employee as he was not compelled to work. It has been argued the driver could ignore the dispatcher's messages, park his cab and go to sleep if he chose. The court said the argument was unrealistic and that the cab owners would not tolerate such conduct by a driver. The court held that the cab owner had the right to control the work of the driver within the limitations set by the very nature of a cab driver's work. Too, the court asked itself the question whether the cab owner was merely engaged in the leasing of taxicabs or was he operating a fleet of taxicabs as a business. It concluded that he was in the business of operating taxicabs. In this connection the court quoted

from *Kaus v. Huston* (N.D. Iowa 1940), 35 F. Supp. 327, 331, a case in which it was held that a cab driver was to be deemed an employee and entitled to unemployment benefits. The language quoted is relevant here:

" 'By narrow technical analysis of such relationship and particularly plaintiff's claimed want of control over the drivers, it is argued that the relationship of master and servant does not exist. It seems to me that this view of the question is too narrow. *The real question for solution is, Does the plaintiff engage merely in the leasing of taxicabs, or does he operate a line of taxicabs as a common carrier of passengers?* When all factors are considered and particularly the contractual relationship of the plaintiff with the passengers carried, I think there can be little doubt that plaintiff is operating the line of taxicabs, and that while he has adopted an ingenious method of fixing the compensation of his drivers and permits the drivers to exercise some discretion over the cab during the period of the driver's shift, nevertheless I think there is no discretion vested in the drivers inconsistent with the relation of master and servant. From the very nature of the case the drivers, in order to perform their duties properly, must exercise very complete control over the cabs while they have them out on their shifts.'

\*\*\* [W] hen all factors are considered we think there can be little doubt \*\*\* they are \*\*\* his employees. One cannot call these drivers 'independent contractors' \*\*\* without embarrassment." *Hannigan v. Goldfarb*, 53 N.J. Super. 190, 206-207, 147 A.2d 56, 65-66.

Though this court has not considered in a workmen's compensation case whether a cab driver under circumstances similar to those here was an 'employee, we have

considered the closely similar question whether such a driver was to be considered an employee under the unemployment compensation statute. In *Gladstone Cab Co. v. Donnelly,* 30 Ill.2d 465, the question was whether Gladstone was liable for contributions under our Unemployment Compensation Act (Ill. Rev. Stat. 1961, ch. 48, par. 300 *et seq.*). Since the Act made only employers subject to its provisions, Gladstone argued it was not liable for contributions because the drivers who leased its cabs were independent contractors, not its employees. To support its argument, Gladstone showed it had entered into "automobile rental contracts" which identified the company as a bailor and the cab drivers as bailees. According to the contracts the drivers agreed to lease or rent cabs from Gladstone for a certain charge per mile and they further agreed to return their cabs in good condition at the end of their 12-hour shifts and to supply their own gasoline. The drivers were not carried as employees on the company's books; the company furnished dispatcher offices and cab stands and provided oil, repairs, anti-freeze and general maintenance of the cabs. The drivers agreed to pay 50% of their receipts to the company and were allowed to keep 50%. Drivers were required to be courteous and were forbidden to drink while on the job. They had the option of accepting or refusing the dispatcher's calls but the drivers could not take cabs out of the State without written permission. If the drivers violated any law while operating the cabs, their leases were subject to termination without notification. Drivers agreed not to drive a cab of any competitor during the term of the lease. This court rejected the contention of Gladstone that the drivers were independent contractors, holding that the company's described right to control the drivers' activities created an employer-employee relationship. In *Meyers v. Cummins,* 9 Ill.2d 582, we also held under like circumstances a taxicab company operator to be an "employer." Also there are numerous decisions under the

Social Security Act (42 U.S.C. sec. 401 *et seq.*), and under other unemployment compensation statutes, that have held that drivers of "rented" cabs were employees. These decisions typically are based on the right of the cab owners to control the drivers activities. Such decisions include *Jones v. Goodson* (10th Cir. 1941), 121 F.2d 176; *Kaus v. Huston* (N.D. Iowa 1940), 35 F. Supp. 327, *aff'd* (8th Cir. 1941), 120 F.2d 183; *Michigan Cab Co. v. Kavanagh* (E.D. Mich. 1941), 82 F. Supp. 486; *Kaus v. Unemployment Compensation Commission* (1941), 230 Iowa 860, 299 N.W. 415; *Salt Lake Transportation Co. v. Board of Review of Industrial Commission* (1956), 5 Utah 2d 87, 296 P.2d 983; see also *Party Cab Co. v. United States* (7th Cir. 1949), 172 F.2d 87, *cert. denied,* 338 U.S. 818; Annot., 10 A.L.R.2d 269, 371-373 (1950).

A court will not, of course, set aside a finding of the Industrial Commission unless the finding is contrary to the manifest weight of the evidence. (*Marek v. Industrial Com.,* 55 Ill.2d 323, 324.) There is no ground here for setting aside the Commission's finding that the claimant was an employee. Morgan clearly had the right to control the claimant's activities as a driver and the right to discharge him from employment. The testimony was that he was required to take 10 calls a day from the company dispatcher; he was required to bring his radio to a designated shop for repairs; he was required to bring his cab in to the garage for service or inspection when called for; it was within the garage manager's discretion to refuse the claimant a cab for a variety of reasons, and Morgan furnished the claimant a cab with its name and telephone number on the side. Looking at all the evidence it is clear that Morgan was in the business of operating a fleet of cabs for public use; it was not in the business of simply leasing vehicles with no interest in their operation as taxis.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*