YELLOW CAB COMPANY, Appellee, *v.* THE INDUSTRIAL COMMISSION *et al.* (James L. Jones, Appellant).

First District (Industrial Commission Division)  No. 1—84—382

Opinion filed May 2, 1984.—Rehearing denied June 27, 1984.

WEBBER, J., dissenting

DeMunno, Krol, DeCarlo & Bongiorno, Ltd., of Chicago (Vito D. De-Carlo, of counsel), for appellant.

Robert E. Haythorne, of Geneva, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Claimant, James L. Jones, filed a claim under the Workmen's Compensation Act for accidental injuries sustained while driving a Yellow cab on November 7, 1975. An arbitrator found that the relationship of employee and employer existed between claimant and respondent Yellow Cab Company at the time of the accident. The arbitrator awarded Jones 46⁴/₇ weeks of temporary total disability, permanent partial disability to the extent of 20% of the whole person, and medical payments. The Industrial Commission, with one dissent, affirmed the existence of an employer-employee relationship and reduced the amount claimant received for permanent partial disability to a 45% loss of the use of his right leg. Respondent sought review in the circuit court of Cook County by writ of *certiorari.* That court found that the Commission's decision that there was an

employer-employee relationship was against the manifest weight of the evidence and reversed the Commission's decision. Claimant appeals.

The sole issue on appeal is whether claimant, a lease cab driver, was an employee of respondent rather than an independent contractor for the purposes of the Workmen's Compensation Act.

Claimant testified before the arbitrator that on October 13, 1975, he went to a new Yellow Cab garage to lease a cab on a 24-hour basis. During this visit, he filled out a personnel resume, presented his chauffeur's license, and talked to the garage manager. At the beginning of each 24-hour lease period, claimant had to sign a lease agreement and pay a lease fee. The lease agreement disclaimed the parties' relationship as one of employer-employee. If the cab became inoperable within a six-county area, respondent would provide repair and tow service. Respondent provided public liability and property damage covering lessor and lessee. All accidents were to be reported immediately, and if claimant failed to do so he would be discharged. The garage manager told claimant to buy his gas at the company garage except in an emergency. Only claimant could drive the cab. The cab could carry passengers only, and no passengers could sit in the front seat.

Claimant was not required to drive a certain number of hours, to fill out trip sheets, to report fares or tips, or to generate a certain amount of income during the lease period. Additionally, claimant was not required to answer radio calls, but if he accepted one, he was expected to follow through with it. When claimant returned the cab at the end of the daily lease period, mileage was reported. As a lease driver, claimant was not issued a paycheck or given any withholding tax forms. He did not qualify for a pension or paid vacation, and was not required to join the union.

Paul Logue, respondent's president, testified that all Yellow cabs are painted alike and had the company's name and telephone numbers printed on their sides. Yellow is not obligated to renew or extend the terms of the lease agreement. Yellow derives good will from the presence of both lease and commission cabs on the street. Roadmen for respondent fill out observation reports on all cabs regarding their dirty and damaged condition and on commissioned cabs regarding company violations. Mileage reports on leased cabs at the end of each lease period are for maintenance purposes only. Logue also testified that a driver did not need any special education, skills or tools, and was not given a test. If a passenger complained about a lease driver, respondent directed the passenger to call the

Consumer Sales Office of the city of Chicago. If the city did not suspend the lease driver's license, respondent would continue to lease cabs to the driver. If a driver had too many accidents, his leasing privileges would not be renewed. Respondent also would not lease a cab to an intoxicated driver.

Claimant contends that the decision of the Commission that an employer-employee relationship existed between the parties at the time of the accident was not against the manifest weight of the evidence.

Our supreme court has held on three occasions in circumstances similar to this case that a lease cab driver is an employee for the purposes of the Workmen's Compensation Act.

In *Morgan Cab Co. v. Industrial Com.* (1975), 60 Ill. 2d 92, 324 N.E.2d 425, the court identified a number of general factors to distinguish between an employee and an independent contractor. The court stated that no one factor is determinative, that all circumstances were to be considered, but that of these factors, the right to control the manner in which the work is done is most important. In applying this right-to-control test, the court upheld the Commission's decision that an employer-employee relationship existed between the cab company and the lease-cab driver based upon the following evidence. The driver was required to accept radio calls from the dispatcher, to have his radio repaired at a designated shop, and to bring the cab to the company garage upon request for inspection or repair. The cabs were painted alike with the company's name and telephone number on their sides, and the cab company could refuse the driver a cab for various reasons. The court stated further that it was clear that the cab company was operating a fleet of cabs for public use rather than simply leasing vehicles with no interest in their operation as taxis.

In *Penny Cab Co. v. Industrial Com.* (1975), 60 Ill. 2d 217, 326 N.E.2d 393, the decision of the Commission that the lease-driver claimant was an employee was upheld upon facts substantially identical to *Morgan* except that Penny cabs had no radios and therefore there were no corresponding company-imposed radio requirements. The court held that the difference between the two cases did not require a different result.

Finally, in *Globe Cab Co. v. Industrial Com.* (1981), 86 Ill. 2d 354, 427 N.E.2d 48, a case very similar to the present one, the Commission's decision that an employer-employee relationship existed between the parties was upheld. Despite a written lease identifying the cab company and driver as lessor and lessee respectively,

the court found that the cab company placed too many restrictions on the driver's activities to be engaged in anything other than the business of operating a fleet of cabs for public use. The court noted the cab company's control over the work shifts and the assignment of cabs to drivers, the requirement that all routine repairs and maintenance on cabs be performed at the company garage, the instruction to claimant that he buy his gas at the company garage, the repair and tow service provided by the cab company for cabs that become inoperable during the lease periods, and the requirements that drivers be courteous to passengers and keep their cabs neat and clean. The court also found significant the facts that the cabs were leased to its drivers, that the cab company provided oil, that all cabs were identical in appearance with the company's name and telephone number printed on them, and that the cab company had a right to discharge the driver or cancel the lease.

As in *Globe*, the clause in the present lease agreement disclaiming an employer-employee relationship is not dispositive of the claimant's status under the Act. (See also *Luby v. Industrial Com.* (1980), 82 Ill. 2d 353, 412 N.E.2d 439.) Many of the factors of control highlighted by the court in the case above are present in this case. The cabs, whether driven by lease or commission drivers, are uniform in appearance and have the company's name and telephone number on them. Respondent had the right to discharge the claimant. It could terminate or refuse to renew the claimant's 24-hour lease and could refuse to assign claimant to a cab for various reasons. Claimant was not permitted to sublease a cab, was instructed to purchase his gas at the company garage, and was required to report mileage at the end of each lease period. Respondent derives goodwill from the public presence of both commissioned and leased cabs that are well maintained. Roadmen fill out observations reports on leased cabs regarding their condition. Respondent performs routine maintenance and repair on its cabs, which presumably would include cab-radio repairs. If a cab breaks down within a six-county area, respondent makes the necessary repairs or tows the cab and, if one is available, provides the driver with another cab. Thus, despite the lease agreement's employment relationship disclaimer, the record clearly indicates that respondent's interest in its cabs did not cease with their leasing, but extended to their operation.

A reviewing court will not set aside a decision of the Commission unless it is contrary to the manifest weight of the evidence. (*Globe Cab Co. v. Industrial Com.* (1981), 86 Ill. 2d 354, 427 N.E.2d 48.) Although the facts in the present case are not identical to the

cited cases, we find that the differences are not so significant as to compel a different result. Respondent is engaged in the business of operating a fleet of cabs, leased and commissioned, for public use. The Commission had sufficient evidence presented to conclude that claimant was an employee of Yellow Cab.

In so holding, we note that the cases relied upon by respondent in which lease drivers were found to be independent contractors under various Federal and State laws do not control claimant's status under the Workmen's Compensation Act. Indeed, in *Local 777, Democratic Union Organizing Com.* (D.C. Cir. 1978), 603 F.2d 862, the case upon which respondent places great emphasis, the court so recognized. In a footnote (603 F.2d 862, 876 n.38), the court cited the *Morgan Cab* and *Penny Cab* holdings and stated that its interpretation of an employee under the Federal labor laws was not affected by the contrary result reached by our supreme court in those cases relating to the Workmen's Compensation Act.

For the reasons stated, the judgment of the circuit court of Cook County reversing the decision of the Industrial Commission is reversed.

Judgment reversed.

SEIDENFELD, P.J., BARRY and KASSERMAN, JJ., concur.

JUSTICE WEBBER, dissenting:
With all due deference to my colleagues, I respectfully dissent from their holding that an employer-employee relationship existed here.

The reliance on *Morgan Cab Co.* and *Globe Cab Co.* is misplaced. In both of those cases the supreme court stated unequivocally that no one factor may determine what the relationship of the parties is in a given situation. To state the matter another way, each case must stand on its own facts, and I find considerable factual differences between the instant case and *Morgan* and *Globe*.

In *Morgan* the driver was required to take 10 calls per day from the company; most drivers worked shifts, although some were purchasing their cabs on a lease-with-option basis; the driver was required to take his radio to a designated shop for repair and was required to bring the cab itself in for repair when called for; the manager could refuse to allow a driver to take a cab; the driver was required to purchase $2 worth of gasoline when turning the cab in.

In *Globe* the driver was required to pay for six days, regardless of the number of days on which the cab was actually used; as in *Morgan* the drivers worked shifts; all repairs were to be made by the company; and the driver had to pay a late fee of $5 if he turned the cab in tardily.

None of this is present in the instant case. For all the record shows, a driver for Yellow Cab could keep his cab at home in the garage during the rental period. Only the profit motive kept him on the street, and such motive is more clearly characteristic of an entrepreneur than a workman. There were no shifts, no mandatory suppliers of gasoline, no late fees.

What is at stake here is interference with the manner in which Yellow elected to do business. The question is not Professor Larson's "relative nature of the work." The nature of Yellow's business, obviously, was to conduct a taxicab operation, but how it determined to do that is its own business and should be free from judicial intermeddling. The question is not *what* Yellow was doing, but *how* it did it: it could employ drivers directly for wages, or it could lease cabs to independent contractors, or it could do both, or any other combination which resulted in the greatest advantage to it. There is nothing to indicate that this was anything other than an arm's length transaction at its inception. The claimant knew exactly what he was getting into; it was not until after an injury that he sought to disclaim his leasing arrangement and obtain that for which he had not bargained.

The totality of the circumstances as set forth in the lease indicates that no employment relationship was intended; in fact, it was specifically avoided, for which no criticism can be leveled. The document appears to have been knowingly drawn to avoid the pitfalls of *Morgan* and *Globe*. The record is barren of any indication that Yellow forced the claimant into the position of lessee, and one can speculate at length as to why the claimant elected a 24-hour lease instead of some more permanent arrangement.

I would affirm the circuit court.