YELLOW CAB COMPANY, Appellant, v. THE INDUSTRIAL COMMIS-SION *et al.* (Jeanette Janvier, Indiv. and as Mother and Natural Guardian, *et al.*, Appellees).

First District (Industrial Commission Division)   No. 1—91—2340WC

Opinion filed November 20, 1992.—Rehearing denied January 25, 1993.

Sonnenschein, Nath & Rosenthal, of Chicago (Richard L. Marcus and Deborah M. Neyens, of counsel), for appellant.

Laks & Forman, of Chicago (Perry M. Laks and Norman Matthew, of counsel), for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

The employer, Yellow Cab Company, appeals the circuit court's confirmation of an Illinois Industrial Commission (Commission) decision which held that the decedent Jean K. Janvier (hereinafter referred to as claimant) was the employer's employee, and accordingly, awarded benefits to claimant's dependents. We affirm.

The pertinent facts are as follows. Claimant drove a taxicab for 2½ years prior to his death on September 10, 1987. Claimant's widow, Jeanette Janvier, testified that claimant drove a cab seven days a week, from about 7 a.m. to 10 or 10:30 p.m. He drove the same cab every day, which he parked in front of their residence. At times, claimant used the cab for personal errands, such as driving her to work or driving to the babysitter's.

Claimant had possession of the vehicle through a lease arrangement with the employer. The lease, which was entered into evidence, included an option to purchase the vehicle (although not the meter and medallion affixed thereto). Additionally, claimant and the employer entered into daily leases. The daily lease form, also entered into evidence, provided that the parties did not have an employer-employee relationship, and that the employer did not have the right to control or supervise claimant in the use of the vehicle. Further, the daily lease provided that claimant did not have to use the vehicle for a determined period of time or in a given geographical area, that claimant did not receive compensation directly from the employer, and that claimant was not required to report his earnings from the use of the vehicle. Gasoline and regular operating and maintenance expenses were claimant's responsibility under the lease.

However, the lease did provide that during the term of the lease, claimant was required to keep the cab and meter in safe and satisfactory repair and running condition, to allow the employer to install and maintain advertising signs, and to allow the employer to inspect the vehicle. Claimant was not allowed to let anyone drive the vehicle other than a sublessee which the employer authorized. Nor was claimant allowed to make any changes in the body of the vehicle, except for replacements of original parts. The employer insured claimant for liability damages and reserved the right to terminate the lease if claimant violated any of the terms of the lease.

On September 10, 1987, claimant was fatally shot while in his taxicab. Police investigation revealed that claimant was the victim of a robbery.

The sole issue presented is whether the Commission's determination that claimant was an employee of the employer for purposes of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) (the Act) was erroneous. This issue has been addressed, albeit under slightly differing factual scenarios, by the courts of this State on several occasions. See *Globe Cab Co. v. Industrial Comm'n* (1981), 86 Ill. 2d 354, 427 N.E.2d 48; *Morgan Cab Co. v. Industrial Comm'n* (1975), 60 Ill. 2d 92, 324 N.E.2d 425; *Penny Cab Co. v. Industrial Comm'n* (1975), 60 Ill. 2d 217, 326 N.E.2d 393; *Yellow Cab Co. v. Industrial Comm'n* (1984), 124 Ill. App. 3d 644, 464 N.E.2d 1079.

Initially, we note that the lease agreement expressly disclaims an employer-employee relationship between the parties. Such a disclaimer was also present in *Globe* and *Yellow Cab*, and those courts affirmed Commission decisions holding that the claimants were employees nonetheless. Such a disclaimer "is not dispositive of the claimant's status under the Act" (*Yellow Cab*, 124 Ill. App. 3d at 647), and we must look to other factors and the actual relationship of the parties to resolve the issue.

In *Morgan*, the court observed the following with respect to the determination of whether a cab driver is an employee or an independent contractor:

"No one factor may determine what relationship is between parties in a given case. It may be necessary to consider a number of factors with evidentiary value, such as the right to control the manner in which the work is done, the method of payment, the right to discharge, the skill required in the work to be done, and who provides tools, materials, or equipment. Of these factors the right to control the manner in which the work is done is the most important in determining the relationship." *Morgan*, 60 Ill. 2d at 97-98.

In the present case, while the employer did not pay claimant on a regular basis from its own coffers, it had a right akin to discharge, in that the lease provides that the employer could terminate it with or without cause. The skill level of driving a cab is less than expert and unusual, which favors the finding of an employer/employee relationship. Further, the employer provided the tools necessary to the work—the vehicle, medallion and meter.

■ In resolving the control factor, courts in taxicab cases have been heavily influenced by: (1) whether the driver accepted radio calls from the company; (2) whether the driver had his radio and cab repaired by the company; (3) whether the vehicles were painted alike with the name of the company and its phone number on the vehicle; and (4) whether the company could refuse the driver a cab. (See *Morgan*, 60 Ill. 2d 92, 324 N.E.2d 425; *Penny*, 60 Ill. 2d 217, 326 N.E.2d 393.) The courts are also influenced by control over work shifts and assignments, requirements that gasoline be purchased from the company garage, repair and tow service that is supplied by the company for the vehicle, requirements that drivers be courteous to customers, and the right to discharge the driver or cancel the lease. (See *Globe*, 86 Ill. 2d 354, 427 N.E.2d 48; *Yellow Cab*, 124 Ill. App. 3d 644, 464 N.E.2d 1079.) Additionally, the *Yellow Cab* court was influenced by the fact that the claimant could not sublease the cab, and that company roadmen filled out reports about the cab's condition. (*Yellow Cab*, 124 Ill. App. 3d at 647.) An important consideration of these courts was resolution of the question of whether the cab company was "in the business of operating a fleet of cabs for public use" or "in the business of simply leasing vehicles with no interest in their operation as taxis." *Morgan*, 60 Ill. 2d at 101; *Globe*, 86 Ill. 2d at 362-63. See also *Yellow Cab*, 124 Ill. 2d at 647-48.

In the case *sub judice*, the employer, noting that some of the factors present in the above cases are not present here, argues that the Commission was in error to determine that claimant was an employee. The employer argues that no consideration flowed to the employee, as is necessary in an employment relationship. According to the employer, claimant was not even an independent contractor, but was a mere lessee, as one who rents a vehicle from such well known rental car companies as Hertz or Avis.

■ While the case is close, we conclude that the Commission's determination of claimant's employment status is not against the manifest weight of the evidence. There is no inflexible rule applicable to all situations to determine whether an individual is an employee or has some other status. In *Morgan*, the court, quoting *Lawrence v. Industrial Comm'n* (1945), 391 Ill. 80, 84, observed:

" 'The existence of the master and servant relationship is primarily, in any given case, a question of ultimate fact, involving in its determination a conclusion derived from a consideration of all the evidentiary facts disclosed by the evi-

dence, in connection with the application of principles of law to the consideration of the evidence. [Citations.]

The rule is well settled that it is the province of the Industrial Commission to draw reasonable inferences and conclusions from evidentiary facts, and the courts are not privileged to set aside the findings of the [C]ommission unless they are manifestly against the weight of the evidence.' " (*Morgan*, 60 Ill. 2d at 97.)

The court further stated that " '[i]f the undisputed facts permit an inference either way *** then the Commission alone is empowered to draw the inference and its decision as to the weight of the evidence will not be disturbed on review.' " *Morgan*, 60 Ill. 2d at 97, quoting *Greenberg v. Industrial Comm'n* (1961), 23 Ill. 2d 106, 108.

Unquestionably, several factors which other courts have relied upon in analyzing the control factor, such as the requirement that gasoline be purchased and repairs done at the employer's garage, use of radio assignments or control of shifts and assignments, are not present in this case. However, several of the most important factors which courts have relied upon in determining that an employer/employee relationship existed between the parties do indeed exist in the present case. Here, claimant was required to keep the vehicle in running condition, and the employer had the right to inspect the vehicle, sign and meter at a time and place the employer designated. Claimant was required to keep the employer's name upon the vehicle and could not paint it any color other than yellow. The employer was entitled to terminate the lease "with or without cause," a provision that suggests an employer/employee relationship. Subletting of the vehicle to any other than an employer-authorized individual (with a valid public chauffeur's license) was prohibited.

What the foregoing establish, contrary to the employer's arguments, is that it was not simply in the business of leasing vehicles. If the employer was, it would not be necessary for it to insist that its name and trademark be prominently placed upon the vehicle, that it inspect the vehicle to determine if it was in running condition, and that the "taxi" sign, meter and medallion be attached. Indeed, the lease itself established that the employer was in the business of providing a fleet of cabs. It states: "Lessee thereby and hereby leases the Automobile as a taxicab." Additionally, the employer secured liability insurance, a prerequisite for continued leasing. It cannot be doubted that the employer received goodwill from claimant's operation of the vehicle, which advertised the employer's

business. While it may or may not be true that the employer, as it asserts in its brief, did not insist that an individual actually operate the vehicle as a taxicab, we need not address such a scenario. (We note that this assertion is in contradiction to both the express language of the lease agreement itself, which provides that the vehicle was leased as a taxicab, and the *raison d'etre* of some of the lease's requirements.) Here, in accordance with the lease agreement, there was testimony that claimant operated the cab up to 15 hours a day, notwithstanding occasional personal errands in the vehicle, and there is no issue as to whether claimant's death occurred while he was operating the vehicle as a taxicab.

Of further support for our holding is our recent case of *Peesel v. Industrial Comm'n* (1992), 224 Ill. App. 3d 711. In *Peesel,* we noted with respect to cases involving this issue: "Of growing importance is the nature of claimant's work in relationship to the employer's business." (*Peesel,* 224 Ill. App. 3d at 716.) The driving of the taxicabs of the fleet is certainly an integral part of the employer's business, and there is no other channel in this case through which the costs of claimant's work-related death can flow. In *Peesel,* we held that an employment relationship existed between claimant and a hauling company (for whom claimant worked pursuant to equipment lease). The "essential element of business" rule in that case provides further authority for affirmance.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McCULLOUGH, P.J., and WOODWARD, STOUDER, and LEWIS, JJ., concur.