538 S.E.2d 276

**Dennis NELSON, Deceased Employee, By and Through His Estate, Appellant,**

v.

**YELLOW CAB COMPANY, Employer, and Travelers Property Casualty Company, Carrier, Respondents.**

No. 3249.

Court of Appeals of South Carolina.

Heard Sept. 12, 2000.

Decided Oct. 9, 2000.

Rehearing Denied Nov. 25, 2000.

Carl H. Jacobson, of Uricchio, Howe & Krell, of Charleston, for Appellant.

Johnnie W. Baxley, III, of Pratt–Thomas, Pearce, Epting & Walker, of Charleston, for Respondents.

ANDERSON, Judge:

The Estate of Dennis Nelson filed a Workers' Compensation claim maintaining Nelson, a taxi driver for Yellow Cab Company, was an employee at the time of his death. The Workers' Compensation Commission, reversing the Single Commissioner, agreed. The Circuit Court, in reversing the Commission, found Nelson was an independent contractor. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

Yellow Cab hired Nelson in 1995 as a part-time taxi driver. During his tenure at Yellow Cab, Nelson gradually increased the number of shifts he worked. In addition, Nelson was employed as a postal worker.

On January 6, 1998, Yellow Cab dispatched Nelson to pick up a passenger in North Charleston for transport to the West Ashley area. Nelson was murdered, apparently by the passenger. The sole question to be determined on appeal is whether Nelson was an employee or an independent contractor of Yellow Cab at the time of his death.

Yellow Cab requires taxi drivers to file an application for employment. The application form reads:

> This is to certify that although I drive a taxicab owned and/or operated by Yellow Cab Company ... I am in no way employed by the company: that I recieve [sic] no salary or other compensation from the company, and that my only financial relationship with the company is to pay rent on the cab I drive, to pay for the gasoline used by me on my shift, and to return the cab with all keys and equipment in good condition at the end of my shift. In consideration of the expense in my training and indoctrination, I agree and understand that I must drive a company car owned by Yellow Cab Co. and not a terminal fee contractor for at least six months after my indoctrination period.

All drivers must sign the application before working for Yellow Cab.

In conflict with the relationship expressed in the application form, Yellow Cab exercises control over the driver's behavior while in the taxi, and the manner in which the drivers perform their jobs. Yellow Cab's "Drivers Information and Training Package" includes numerous rules and regulations governing the drivers. For instance, although there is no uniform for the drivers, Yellow Cab imposes a dress code, prohibiting unbuttoned and/or sleeveless shirts, and requiring a neat, orderly appearance. Failure to observe the dress code is a ground for termination of employment.

Further, in accordance with fares set by the City of Charleston, Yellow Cab mandates a set fare, and drivers must

transport four people for the price of one fare. The drivers are bound to use a Yellow Cab meter as opposed to an Ever Ready Dispatch, or charging flat rates. Yellow Cab is the only cab company in the area that uses meters to establish taxi fares. Yellow Cab acknowledged that a driver's failure to use a Yellow Cab meter constitutes a ground for termination. The drivers are subject to the Yellow Cab rule prohibiting drivers from transporting non-paying passengers ("dead-heading"). Yellow Cab admitted dead-heading by a driver was cause for termination.

There are numerous other grounds for termination of a taxi driver by Yellow Cab including: possessing a weapon of any kind in the taxi; drinking or using drugs while operating the taxi; failing to deliver packages; and filing a false application. Yellow Cab conceded it could fire a driver for any reason.

The drivers generally retain their fares. However, Yellow Cab makes payments to the drivers under special fare situations in which a driver picks up a certain fare or package, a blue card is issued by the company calling for the pickup, and the driver turns the card into Yellow Cab for payment. These customers are charge account customers billed directly by Yellow Cab. Yellow Cab neither withholds taxes from the drivers' fares nor issues W–2 or 1099 forms to the drivers. On his tax return, Nelson reported his taxi fares as income from a sole proprietorship.

The drivers lease their taxis from Yellow Cab, paying for either twelve or twenty-four hour shifts. Nelson leased his taxi for twenty-four hour shifts at $79 per day. The taxis are painted yellow and identified as Yellow Cab vehicles. Yellow Cab furnishes the radio and use of the dispatch service. The drivers pay for their own gas. The company pays for insurance, a portion of which is collected from the drivers, and repairs on the vehicles.

The drivers select the number of hours they want to work during the twenty-four hour shift. Whenever a driver checks in as operating the vehicle as a taxi, he is required to have the radio on and respond to the dispatcher. Yellow Cab allows the drivers to earn "vacation," which is paid in the form of Yellow Cab giving a car to a driver without requiring lease fees. Once the drivers pay the lease fee, they are entitled to

personal use of the taxi whenever they are not checked in as operating the vehicle.

On the evening Nelson was murdered, Nelson was dispatched by a Yellow Cab dispatcher to pick up the fare.

## STANDARD OF REVIEW

Coverage under the Workers' Compensation Act depends on the existence of an employment relationship. *McDowell v. Stilley Plywood Co.*, 210 S.C. 173, 41 S.E.2d 872 (1947). Whether an employer-employee relationship exists is an initial fact to be established prior to applying the Act. *Dawkins v. Capitol Constr. Co.*, 250 S.C. 406, 158 S.E.2d 651 (1967); *Gray v. Club Group, Ltd.*, 339 S.C. 173, 528 S.E.2d 435 (Ct.App.2000). In the absence of such a relationship, the Workers' Compensation Commission lacks jurisdiction to order or approve an award of benefits. *Glass v. Dow Chem. Co.*, 325 S.C. 198, 482 S.E.2d 49 (1997).

The existence or absence of an employment relationship is thus a jurisdictional fact, which the court must determine based on a review of all the evidence in the record. *Bridges v. Wyandotte Worsted Co.*, 243 S.C. 1, 132 S.E.2d 18 (1963). If the factual issue before the Full Commission involves a jurisdictional question, as here, this Court's review is governed by the preponderance of the evidence standard. *Vines v. Champion Bldg. Products*, 315 S.C. 13, 431 S.E.2d 585 (1993); *Lake v. Reeder Constr. Co.*, 330 S.C. 242, 498 S.E.2d 650 (Ct.App.1998). *See also Kirksey v. Assurance Tire Co.*, 314 S.C. 43, 443 S.E.2d 803 (1994)(this Court can find facts in accordance with the preponderance of evidence when determining jurisdictional question in Workers' Compensation case); *Canady v. Charleston County Sch. Dist.*, 265 S.C. 21, 216 S.E.2d 755 (1975)(in determining whether Commission had jurisdiction of claim presented, appellate court is not bound by finding of fact by Commission; appellate court has both power and duty to review entire record and find therefrom jurisdictional facts, without regard to conclusion of Commission on such issue, and will decide jurisdictional question in accord with preponderance of evidence); *Lake*, 330 S.C. at 246, 498 S.E.2d at 653 ("Judicial review of a Workers' Compensation decision is governed by the substantial evidence rule of the

Administrative Procedures Act. However, when the Commission's jurisdiction is at issue, the reviewing court is not bound by the Commission's findings of fact upon which jurisdiction is dependent." (citation omitted)); *Sanders v. Litchfield Country Club*, 297 S.C. 339, 377 S.E.2d 111 (Ct.App.1989)(where jurisdictional issue is raised, this Court must review record and make its own determination whether the preponderance of evidence supports Commission's factual findings bearing on that issue).

 Because the issue in the case *sub judice* is jurisdictional, this Court has the power and duty to review the record and decide the jurisdictional facts in accordance with the preponderance of evidence. *See Lake, supra.*

### *LAW/ANALYSIS*

Nelson's estate contends the preponderance of evidence establishes Nelson was a Yellow Cab employee at the time of his death. We agree.

 Workers' Compensation laws are intended by the Legislature to relieve workers of the uncertainties of a trial for damages by providing sure, swift recovery for workplace injuries. *Peay v. U.S. Silica Co.*, 313 S.C. 91, 437 S.E.2d 64 (1993); *Cokeley v. Robert Lee, Inc.*, 197 S.C. 157, 14 S.E.2d 889 (1941). Although an award will not be made unless an employment relationship existed at the time of the injury, to give effect to this legislative intent, Workers' Compensation statutes are construed liberally in favor of coverage. *See Mauldin v. Dyna–Color/Jack Rabbit*, 308 S.C. 18, 416 S.E.2d 639 (1992); *McDowell v. Stilley Plywood Co.*, 210 S.C. 173, 41 S.E.2d 872 (1947); *Spivey v. D.G. Constr. Co.*, 321 S.C. 19, 467 S.E.2d 117 (Ct.App.1996); *McLeod v. Piggly Wiggly Carolina Co.*, 280 S.C. 466, 313 S.E.2d 38 (Ct.App.1984). Furthermore, South Carolina's policy is to resolve jurisdictional doubts in favor of the inclusion of employees within Workers' Compensation coverage. *O'Briant v. Daniel Constr. Co.*, 279 S.C. 254, 305 S.E.2d 241 (1983); *Horton v. Baruch*, 217 S.C. 48, 59 S.E.2d 545 (1950).

 The case at bar presents a novel issue in South Carolina: *Is a taxi driver, who leases a taxicab for a per diem*

*payment under a written document entitled "Drivers Information and Training Package" and keeps his fares and tips as compensation, an employee covered by Workers' Compensation law, or an independent contractor to whom coverage is unavailable?*

The fundamental test of the employment relationship is the right of the employer to control the details of the employee's work. *Gray v. Club Group, Ltd.,* 339 S.C. 173, 528 S.E.2d 435 (Ct.App.2000); 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 61.01 (1999). It is not the actual control exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment. *Young v. Warr,* 252 S.C. 179, 165 S.E.2d 797 (1969); *Gray, supra.*

The test is based on the right to control, not the exercise. 3 Larson, *supra,* § 61.02. "Most often the distinction is of importance when a skilled or experienced worker appears to be doing his or her job without supervision or interference." *Id.* By an "exercise test," the employee would seem to be uncontrolled; yet, "it will often be found that the employer, in any showdown, would have the ultimate right to dictate the method of work if there were any occasion to do so." *Id.* The right to control does not require the dictation of the thinking and manner of performing the work. 3 Larson, *supra,* § 61.02 n. 3. It is enough if the employer has the right to direct the person by whom the services are to be performed, the time, place, degree, and amount of said services. *Id.*

Whether an individual is an employee or an independent contractor is a fact-specific determination reached by applying certain general principles. *South Carolina Workers' Compensation Comm'n v. Ray Covington Realtors, Inc.,* 318 S.C. 546, 459 S.E.2d 302 (1995); *Gray, supra.* There are four factors to determine the right of control: (1) direct evidence of the right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire. *Ray Covington Realtors, supra; Tharpe v. G.E. Moore Co.,* 254 S.C. 196, 174 S.E.2d 397 (1970); *Gray, supra.* In his treatise on Workers' Compensation law, Larson academically analyzed the factors:

It is commonly assumed that these [factors] work with equal force in both directions; that is, that in each instance, evidence of an employment-type arrangement is persuasive of the employee status, while contrary evidence is persuasive of independent contractorship.... [Yet], for the most part, any single factor is not merely indicative of, but, in practice, virtually proof of, the employment relation; while, in the opposite direction, contrary evidence is as to any one factor at best only mildly persuasive evidence of contractorship, and sometimes is of almost no such force at all. Independent contractorship, then, is established usually only by a convincing accumulation of these [factors], while employment, although a similar accumulation is often attempted, can if necessary often be solidly proved on the strength of one of the four [factors].

3 Larson, *supra*, § 61.04.

We find compelling evidence under the first and fourth factors leading to the ineluctable conclusion that an employment relationship existed. Yellow Cab retains the right to fire the drivers and the right to control the drivers to the magnitude, degree, and intensity that Nelson is an employee rather than an independent contractor. Larson discussed the strength of the right-to-fire factor:

The power to fire, it is often said, is the power to control. The absolute right to terminate the relationship without liability is not consistent with the concept of independent contract, under which the contractor should have the legal right to complete the project contracted for and to treat any attempt to prevent completion as a breach of contract.

A[n] ... illustration[ ] will show how cogent a consideration the unqualified right to fire can be......

....

In a Louisiana case, [*Deason v. Coal Operators Cas. Co.*, 43 So.2d 630, 631 (La.Ct.App.1950) ], a pulpwood producer, although furnishing his own truck, paying his own employees, and being paid by the cord, was held to be an employee almost entirely because he was subject to an absolute right in the employer to terminate the relationship. The court said:

The essential criterion seems to be found in the ability of the employer to terminate the work at will. Any employee cannot deem to be independent when his work can be stopped at the will of the employer, because ... the power to terminate the employment, of necessity, gives to the employer the power to control the activities of the employee.....

Examples could be multiplied in which most of the other indicia-method of payment, furnishing of equipment, skilled nature of the work, sometimes provision by the employee even of his own assistants and insurance, and not infrequently contractual disavowals of right of control and of employment relation-have pointed toward independent contractorship; yet the one element of right to fire, with its attendant implied right to control, has carried the day for employment relationship.

3 Larson, *supra,* § 61.08[2] (footnotes omitted).

Yellow Cab, relying on *South Carolina Workers' Compensation Comm'n v. Ray Covington Realtors, Inc.,* 318 S.C. 546, 459 S.E.2d 302 (1995), argues the "right to terminate the working relationship is not inconsistent with Yellow Cab's right to terminate the independent contractor relationship." In *Ray Covington Realtors,* the South Carolina Supreme Court explained:

While the fourth factor, the right to fire, weighs here in favor of a finding that [Respondent] is an employee, the fact that [Respondent] believed appellant could fire him is not inconsistent with appellant's right to terminate the independent contractor relationship. The dispositive question is appellant's "right and authority to control and direct [Respondent's] particular work or undertaking, as to the manner or means of its accomplishment." *Young v. Warr,* [252 S.C. 179, 165 S.E.2d 797 (1969) ].

*Ray Covington Realtors,* 318 S.C. at 549, 459 S.E.2d at 303.

Clearly, Yellow Cab retains rights to control beyond just the right to terminate an independent contractor relationship, as described in *Ray Covington Realtors.* In conjunction with the right to fire, Yellow Cab reserves rights over the drivers' dress, equipment used in the vehicles, fare-setting, dead-

heading, and radio dispatch requirements when checked in as a driver.

Our research reveals there is a split of authority on whether a taxi driver, who leases a taxicab under a per diem payment agreement and keeps his fares and tips as compensation, is an employee or independent contractor. Irrefutably, the majority rule holds the taxicab driver is an employee for Workers' Compensation coverage. These decisions typically are based on factual aspects of the relationship, such as the right of the cab owners to control the drivers' activities and the right to terminate. *See Bowdoin v. Anchor Cab*, 643 So.2d 42 (Fla. Dist.Ct.App.1994); *Globe Cab Co. v. Industrial Comm'n*, 86 Ill.2d 354, 55 Ill.Dec. 928, 427 N.E.2d 48 (1981); *Penny Cab Co. v. Industrial Comm'n*, 60 Ill.2d 217, 326 N.E.2d 393 (1975); *Yellow Cab Co. v. Industrial Comm'n*, 238 Ill.App.3d 650, 179 Ill.Dec. 691, 606 N.E.2d 523 (1992); *Yellow Cab Co. v. Industrial Comm'n*, 124 Ill.App.3d 644, 80 Ill.Dec. 96, 464 N.E.2d 1079 (1984); *White Top and Safeway Cab Co. v. Wright*, 251 Miss. 830, 171 So.2d 510 (1965); *Shinuald v. Mound City Yellow Cab Co.*, 666 S.W.2d 846 (Mo.Ct.App. 1984); *Employers Ins. v. Greater Omaha Transp. Co.*, 208 Neb. 276, 303 N.W.2d 282 (1981); *Naseef v. Cord, Inc.*, 48 N.J. 317, 225 A.2d 343 (1966); *Hannigan v. Goldfarb*, 53 N.J.Super. 190, 147 A.2d 56 (App.Div.1958); *Ziegler v. Fillmore Car Serv., Inc.*, 83 A.D.2d 692, 442 N.Y.S.2d 276 (1981); *Nesbit v. Powell*, 558 S.W.2d 436 (Tenn.1977). Similarly, numerous decisions under the Social Security Act and unemployment compensation statutes have held drivers of leased cabs were employees. *See Jones v. Goodson*, 121 F.2d 176 (10th Cir.1941) (although this case arose under Social Security Act, for present purposes, the reasoning of the court is apposite); *Salt Lake Transp. Co. v. Board of Review*, 5 Utah 2d 87, 296 P.2d 983 (1956) (analogous even though case was decided under the Unemployment Compensation Act). Cases holding that lessee cab drivers are not employees for Workers' Compensation purposes represent the minority view. *Yellow Cab Coop., Inc. v. Workers' Compensation Appeals Bd.*, 226 Cal.App.3d 1288, 277 Cal.Rptr. 434 (1991).

The Supreme Court of Georgia, in *Golosh v. Cherokee Cab Co.*, 226 Ga. 636, 176 S.E.2d 925 (1970), addressed whether a claimant taxicab driver was, at the time of his injury, an

employee of Cherokee Cab Company rather than an independent contractor. In reversing the finding of the Georgia Court of Appeals that claimant was an independent contractor, the court concluded:

> The Court of Appeals ... based its decision solely on a consideration of the manner in which Golosh was compensated by Cherokee Cab Company as a driver, and disregarded the true test of the nature of the relationship in such cases as many times set forth in decisions by this court and by the Court of Appeals. "The test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract."

> Applying the foregoing well established test to the facts in this case, it is clear that there was ample evidence to authorize the board to find a retention by the employer of the right of control over the time, manner and method of doing the work. Under the evidence, the claimant was employed to drive a taxicab owned by Cherokee Cab Company. Aside from the manner of compensation dealt with by the Court of Appeals, the evidence showed that he was employed for no definite period of time and that he could have been discharged or his services dispensed with at any time at the pleasure of the owner and president of the company. The claimant received most, if not all, of his calls to pick up passengers over the radio through the Cherokee Cab Company's transmitter. He testified that if he did not wish to go to a particular location to pick up a passenger, he simply did not reply to the radio call. This evidence shows no more than that the employer, due to the nature of the work, had, as a practical matter, little direct control over the details of the employee's work and that the employee had ample opportunity to evade supervision. However, the claimant testified that the employer could tell him when to come to work, how long to work and when to quit work, and that if he refused to obey the employer's instructions as to working hours, the employer could discharge him or refuse

to let him drive a cab thereafter. We have no hesitancy in holding that, nothing else appearing, this evidence as to the power to terminate the employment alone is sufficient evidence to authorize a finding that the cab company had the right to control the time, manner and method of doing the work. . . . "[W]here one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the employer has retained the right to control the manner, method, and means of the performance of the contract, and that the employee is not an independent contractor." The test is not whether the employer *did in fact control* and direct the employee in the work, but it is whether the employer had that right under the employment contract. . . . [T]he mode of payment, while it may be a circumstance tending to indicate the nature of the relationship between the parties, it is by no means the controlling or decisive factor to be considered. *Golosh*, 176 S.E.2d at 926–27 (citations omitted)(emphasis in original).

The Illinois Supreme Court held, in a circumstance similar to this case, an employer-employee relationship existed between a taxicab owner and injured taxicab driver, who paid a stipulated sum to the owner for the right to drive the taxicab on a twelve hour shift and who kept all fares and tips. In *Morgan Cab Co. v. Industrial Comm'n*, 60 Ill.2d 92, 324 N.E.2d 425 (1975), the court identified a number of general factors to distinguish between an employee and an independent contractor. The court emphasized:

> No one factor may determine what the relationship is between parties in a given case. It may be necessary to consider a number of factors with evidentiary value, such as the right to control the manner in which the work is done, the method of payment, the right to discharge, the skill required in the work to be done, and who provides tools, materials, or equipment. Of these factors the right to control the manner in which the work is done is the most important in determining the relationship.

*Morgan*, 324 N.E.2d at 428. In applying this right to control test, the court upheld the commission's decision that an employer-employee relationship existed between the cab compa-

ny and the lease cab driver based upon the following evidence. The driver was required to accept radio calls from the dispatcher, to have his radio repaired at a designated shop, and to bring the cab to the company garage upon request for inspection or repair. The cabs were painted alike with the company's name and telephone number on their sides, and the cab company could refuse the driver a cab for various reasons. The court further determined it was clear the cab company was operating a fleet of cabs for public use rather than simply leasing vehicles with no interest in their operation as taxis.

"In resolving the control factor, courts in taxicab cases have been heavily influenced by: (1) whether the driver accepted radio calls from the company; (2) whether the driver had his radio and cab repaired by the company; (3) whether the vehicles were painted alike with the name of the company and its phone number on the vehicle; and (4) whether the company could refuse the driver a cab." *Yellow Cab Co. v. Industrial Comm'n*, 238 Ill.App.3d 650, 179 Ill.Dec. 691, 606 N.E.2d 523, 525 (1992). Additionally, courts are impacted by the right to discharge the driver or cancel the lease. *Id.*

The preponderance of evidence supports the Commission's factual finding that Nelson was an employee of Yellow Cab at the time of his death. There is no inflexible rule applicable to all situations to determine whether an individual is an employee. The existence of the employer-employee relationship is primarily, in any given case, a question of ultimate fact, involving in its determination a conclusion derived from a consideration of all the evidentiary facts disclosed by the evidence, in connection with the application of principles of law to the consideration of the evidence. *See Morgan Cab Co., supra.*

We recognize the Court of Appeals of North Carolina, when faced with an issue comparable to the instant case, ruled the taxicab driver was an independent contractor. In *Alford v. Victory Cab Co.*, 30 N.C.App. 657, 228 S.E.2d 43 (1976), the claimant, a taxicab driver, was shot during an argument with the company's dispatcher. The commissioner denied compensation to the claimant, holding he was not an employee. On appeal, the court held:

This appeal presents the question of whether appellant was an employee or an independent contractor. Appellant

contends that he was not an independent contractor. He supports his argument by several cases from other jurisdictions. Our research reveals additional authority outside this State in support of the contention that a taxicab driver who rents his cab and keeps his fares and tips as compensation is an employee.

Of the few states which have considered the employment status of **a claimant on the facts as presented here a majority appear to consider the claimant an employee for purposes of workmen's compensation.** In determining whether the claimant is an employee entitled to compensation many of these cases turn on the nature of the claimant's work in relation to the business for which the work is being done.

The test we must employ to determine appellant's employment status turns on the amount of control exercised over the claimant. As stated in *Little v. Poole,* 11 N.C.App. 597, 601, 182 S.E.2d 206, 209 (1971):

> "The test for determining whether a relationship between parties is that of employer and employee, or that of employer and independent contractor, is whether the party for whom the work is being done has the right to control the worker with respect to the manner or method of doing work, as distinguished from the right merely to require certain definite results conforming to the contract."

Findings of fact support the Commissioners' conclusion that appellant was an independent contractor, because the right of control did not rest in Victory. Claimant rented a taxicab from Victory for a twenty-four hour period for a flat fee of $15, and Victory had no supervision or control over the manner or method claimant chose to operate that cab. Claimant had complete control over his work schedule while he used the cab. He could disregard the radio dispatcher, use the cab for his own purposes during the time it was rented, and he kept all the fares and tips he earned. *Alford,* 228 S.E.2d at 45–46 (citations omitted)(emphasis added). The court affirmed the claimant was not an employee, finding the cab company exercised no control.

Our courts often rely on North Carolina law to interpret the South Carolina Workers' Compensation Act. *See Spoone v. Newsome Chevrolet–Buick,* 309 S.C. 432, 434, 424 S.E.2d 489,

490 (1992)("Because South Carolina adopted large portions of the North Carolina Workers' Compensation legislation, we rely on North Carolina precedent in Workers' Compensation cases."); *Stephen v. Avins Constr. Co.*, 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996) (decisions of North Carolina courts interpreting that state's Workers' Compensation statute are entitled to weight when South Carolina courts interpret South Carolina Workers' Compensation law because South Carolina statute was fashioned after that of North Carolina).

However, our courts are not bound by North Carolina precedent. *See Layton v. Hammond–Brown–Jennings Co.*, 190 S.C. 425, 3 S.E.2d 492 (1939). Larson criticized the *Alford* decision:

> The arrangement was renewed each day, and the company had the right to refuse a cab to any driver whose work was not satisfactory. The court indicated that the test to be employed in North Carolina in determining the claimant's employment status was the amount of control exercised by the alleged employer, rather than the "relative nature of the work test." On this basis the court declined to follow what it acknowledged to be the majority result on similar facts in other jurisdictions. The court ignored completely the control implications of the company's right to "fire" from day to day.

*See* 3 Larson, *supra,* Digest § 60.01D n. 2.

Our courts have consistently held the test to be utilized is the *right* to control. The result reached by the *Alford* court flies in the face of the majority rule in this country. *See Central Mgmt. Co. v. Industrial Comm'n of Arizona,* 162 Ariz. 187, 781 P.2d 1374 (Ct.App.1989)("[M]any jurisdictions hold that taxi drivers are employees for workers' compensation purposes .... [W]e join those jurisdictions ...." (citations omitted)).

We decline to follow *Alford* in these circumstances and find Yellow Cab retained the right to exercise sufficient control over Nelson, including the right to fire, as to render him an employee.

■ The existence of the application form and language denying an employer-employee relationship does not change the nature of the relationship in this case. The attempt of a contract to specify a particular legal relationship that is de-

signed to evade the Workers' Compensation Act will be disregarded. 3 Larson, *supra*, § 61.05[1] (citing *Spivey v. D.G. Constr. Co.*, 321 S.C. 19, 467 S.E.2d 117 (Ct.App.1996)(conversation during which employer states to employee that they "get their story straight" and agree the employee is an independent contractor will be disregarded when the four factors of employment status are present)). Even without an evasive intent, "the contractual designation of the relationship as employment or contractorship may be so plainly and completely at odds with the undisputed facts that the contractual designation must be disregarded." 3 Larson, *supra*, § 61.05[1].

## CONCLUSION

We hold the *test* to be employed in South Carolina in determining the claimant's employment status is the *right to control, not the amount of actual control exercised.* Giving full efficacy to the test, we rule the "right to control" maintained by Yellow Cab sustains the *factual* and *legal* conclusions of the Workers' Compensation Commission. The preponderance of evidence demonstrates Nelson was an employee of Yellow Cab. Concomitantly, we **REVERSE** the Circuit Court, **AFFIRM** the Commission, and **REMAND** for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

GOOLSBY and HUFF, JJ., concur.