432 So.2d 1364 (1983)
William La GRANDE, Appellant,
v.
B & L SERVICES, INC., and Florida Insurance Guaranty Association, Appellees.
No. AM-141.
District Court of Appeal of Florida, First District.
June 9, 1983.
*1365 Robert W. Schlorff, II, Fort Lauderdale, for appellant.
John M. Kelly, Santa Monica, Cal., of Pyszka & Kessler, Miami, for appellees.
NIMMONS, Judge.
This is a workers' compensation case in which La Grande, a taxi cab driver, appeals from an order of the deputy commissioner denying his claim on the grounds that he was an independent contractor and not an employee of appellee B & L Services, Inc. La Grande was injured when he was struck by an automobile on February 27, 1980, while standing near the taxi cab which he *1366 had been operating. We find that competent substantial evidence supports the ruling of the deputy and affirm.
Long ago, our Supreme Court recognized that there is no hard and fast rule governing the question as to when one should be regarded as an employee or independent contractor, and that each case must be considered on its own facts. Magarian v. Southern Fruit Distributors, 146 Fla. 773, 1 So.2d 858, 861 (Fla. 1941). We shall first examine the pertinent aspects of the relationship which existed between La Grande and B & L.
B & L holds a certificate of public convenience and necessity allowing it to provide taxicab services throughout Broward County. B & L has several types of agreements which can be entered into by taxicab drivers wishing to operate B & L vehicles. On October 9, 1979, La Grande and B & L entered into a written contract designated as a "taxicab service agreement." Generally, the agreement provided for B & L to furnish La Grande with a taxicab in good working order, to pay for licenses, taxes and fees on such taxicab, and to furnish public liability insurance protecting the driver from claims by third parties. The agreement provided for the taxicab to be garaged daily for servicing and cleaning at B & L's garage. In consideration of the services and equipment furnished by B & L, the driver was required to pay B & L a flat daily rate plus a certain amount per mile, with B & L reserving the right to change the rate schedule at any time. No uniform or dress code was provided for by the agreement except that the driver was to be "neat and clean."
The agreement required the driver to operate the cab in conformance with applicable laws and ordinances. Otherwise, the driver was to "exercise complete discretion in the operation of the [taxicab] and in the performance of those duties generally recognized to be part of performing taxicab services." Although B & L agreed to make available to the driver its radio dispatch service for prospective passengers, the driver was "free to perform all or part of his taxicab services independently of Owner's dispatching systems or concession agreements."
The agreement further purported to disclaim any relationship of employer/employee, master/servant, or principal/agent and characterized its relationship as "that of seller/buyer, the buyer being an independent person engaged in the business of driving taxicabs, buying services of the Owner with which to perform taxicab service, free from interference or control on the part of the Owner in the operation of said taxicab." The agreement also acknowledged that B & L would not provide workers' compensation insurance for the driver, and that B & L would not be expected to withhold income for any taxes including income tax or social security.
The agreement provided for the driver to keep trip records "required by the City of Fort Lauderdale and Broward County." The term of the contract was for a period of twelve months although it would be deemed cancelled with no liability on the part of either party if B & L failed or was unable to provide either a taxicab or any of B & L's services when requested by the driver, or upon driver's failure to purchase services for five consecutive days without notice to B & L. The agreement was not assignable by the driver.
In practice, the trip records, or "trip sheets" as they are commonly called in the industry, were not used by the parties in this case as a means for B & L's controlling the method utilized by La Grande in performing his responsibilities under the agreement. As indicated by the agreement, La Grande's responsibility for keeping a record of all trips derived from a local ordinance. Governmental regulations do not constitute control or supervision by the putative employer. The only information on the trip sheets utilized by La Grande and B & L was the daily meter mileage which was necessary to figure the amount owed by La Grande under the agreement's rate schedule.
*1367 Dress code requirements are sometimes regarded as significant in cases such as this. E.g., City Cab Co. of Orlando, Inc. v. N.L.R.B., 628 F.2d 261, 265 (D.C. Cir.1980). At hearing, La Grande attempted to prove that he was governed by a dress code. However, when all was said and done, it became evident that what little dress code there was (shoes, long pants and collared shirt) was required by local ordinance. Here again, we would note that governmental regulation of workers should not be visited upon the putative employer in determining whether the latter has such control over the worker as would establish an employment relationship.
Although the evidence indicated that the vast majority of fares serviced by La Grande originated through B & L's dispatcher, nevertheless, the deputy commissioner was justified in attaching significance to the fact that La Grande was not required to respond to the dispatcher's calls and was free to operate independently of the dispatcher. Indeed, there was evidence that some drivers commonly ignored the dispatcher in favor of "walk-up" business such as at hotels.
As found by the deputy, drivers operating under this kind of agreement determined for themselves the days they would work as well as the hours of the day. Moreover, while on duty they were not required to periodically report their location to the dispatcher.
La Grande testified that "as far as [he] knew," he was required to buy his gasoline from B & L. However, although B & L recommended that the drivers purchase their gasoline from it, there was no such requirement.
B & L provided La Grande no fringe benefits of the kind usually found in an employment relationship.
As previously mentioned herein, the contract between La Grande and B & L, although not using the terminology "independent contractor," purported to expressly embrace such a relationship and to disclaim an employer/employee relationship. Certainly, we recognize that the legal relationship of these parties does not depend upon what they say it was. See Justice v. Belford Trucking Company, Inc., 272 So.2d 131, 134 (Fla. 1973); Cantor v. Cochran, 184 So.2d 173 (Fla. 1966). However, the contract provisions pertaining thereto should not be completely ignored. Although of lesser significance than other factors, such provisions do indicate a refusal by the worker to submit to pervasive control by the company and a recognition by the company of the absence of a master's control over the worker. See, Restatement of Agency 2d, § 200, Comment (m) at page 492; Local 777, Democratic Union Organizing Committee v. N.L.R.B., 603 F.2d 862 (1978).
Whether a person should be regarded as an employee or independent contractor centers around the degree of control which the putative employer exercises over the person, the decisive question being who has the right to direct what shall be done, and how and when it shall be done. Magarian v. Southern Fruit Distributors, supra; National Surety Corp. v. Windham, 74 So.2d 549 (1954); Lee v. American Family Life Assurance Company of Columbus, 431 So.2d 249 (Fla. 1st DCA 1983); Collins v. Federated Mutual Implement & Hardware Insurance Co., 247 So.2d 461, 463 (Fla. 4th DCA 1971). As stated in Collins, supra:
It may be said that the recognized distinction between an employee and an independent contractor is determined by whether the person is subject to or whether he is free from control with regards to the details of the engagement. Florida Industrial Commission v. State, 1945, 155 Fla. 772, 21 So.2d 599; 2 Am. Jur., Agency § 8.
* * * * * *
The relationship of employer and employee requires control and direction by the employer over the actual conduct of the employee. This exercise of control over the person as well as the performance of the work to the extent of prescribing the manner in which the work shall be executed and to the method and details by *1368 which the desired result is to be accomplished, is the feature that distinguishes an independent contractor from a servant.
247 So.2d at 463.
Measured by the above standards, we are of the view that there was not that degree of control exercised by B & L over La Grande as would pierce the independent contractor status contemplated by the parties in their taxicab service agreement. Although the evidence presented by the parties was in some respects conflicting, the deputy, as trier of the fact, was at liberty to resolve those conflicts in favor of the E/C.
We acknowledge that although the term of the agreement purported to be for a full twelve-month term, the termination provisions were such that B & L could terminate it at anytime, and we recognize that the ability to terminate such a relationship at will without incurring liability is an attribute more characteristic of an employment situation than that of independent contractor. However, although a factor to be considered, it is by no means conclusive on the issue of independent contractor versus employee status. Cantor v. Cochran, 184 So.2d 173 (Fla. 1966); Jenkins v. Peddie, 145 So.2d 729, 730 (Fla. 1962); Lee v. American Family Life Assurance Company of Columbus, supra.
We have also considered the fact that a portion of the sums paid by La Grande to B & L under the agreement's rate schedule depends upon La Grande's daily meter mileage. This may be regarded as relevant to the question of whether the "goodwill" in La Grande's taxicab driving business inured to his benefit or the company, a factor which has been considered relevant by some authorities. E.g., City Cab Co. of Orlando v. N.L.R.B., supra. However, even if substantially all of the goodwill were deemed to inure to the company, this factor is of relatively little significance in the determination of the principal issue, that is, the extent of control exercised by B & L over its driver.[1]
In any event we are not persuaded that: (1) the fact that B & L could terminate the agreement at any time; (2) the fact that arguably, most of the goodwill inured to the company's benefit; or (3) the other facts urged by La Grande, are sufficient to overcome the other evidence belying the kind of control requisite to an employment relationship.
The deputy's order finding that La Grande was an independent contractor under § 440.02(2)(d)1, Florida Statutes, is supported by competent, substantial evidence. The order denying La Grande's claim is, therefore, AFFIRMED.
BOOTH and WIGGINTON, JJ., concur.
NOTES
[1] In Local 777, Democratic Union Organizing Committee v. N.L.R.B., supra, the court stated:

The Board asserts that "all goodwill arising from the operation of the cabs inure to the companies' benefit." This factor, even if true, has no relevance to the companies' control of the drivers. It is only of minimal, if any, importance. Moreover, goodwill does inure directly to the benefit of the lessees who drive the cabs. It is their principal stock in trade.
603 F.2d 871.