643 So.2d 42 (1994)
Jon M. BOWDOIN, Appellant,
v.
ANCHOR CAB, Appellee.
No. 93-754.
District Court of Appeal of Florida, First District.
September 22, 1994.
James A. Sheehan, St. Petersburg, for appellant.
Jeffrey W. Hensley of Thompson & Hensley, P.A., St. Petersburg, for appellee.
PER CURIAM.
In this workers' compensation case, claimant Jon M. Bowdoin appeals the order of the judge of compensation claims (JCC) denying his claim for benefits on the ground that claimant was an independent contractor. We reverse and remand.[1]
Claimant worked as a driver of an Anchor Cab from October 4, 1990, through October 14, 1990, when he was struck by a passenger, suffering injuries to the face, neck and right leg. Appellee Anchor Cab denied the claim for benefits on the ground that claimant was *43 an independent contractor. The following facts were adduced at the hearing on the claim. Mr. Del Pino was the owner of Anchor Cab, but owned only one taxi cab. The remainder of his fleet of approximately twelve cabs was owned by Mr. Eberle. Eberle leased the vehicles to drivers such as claimant for a flat daily rate of $47.00 or $25.00 on Sunday. Del Pino was responsible for equipping the vehicles with a radio, meter and provided liability insurance. In return, Eberle paid Del Pino $195.00 per week per car for "stand dues." It was Del Pino who established the daily rate that drivers would pay Eberle for leasing the cabs. The drivers would pay the leasing fee to Eberle or the Anchor Cab dispatcher.
Each of the taxi cabs bore the name of "Anchor Cab" on its sides. Of extreme significance was Del Pino's testimony that there were no governmental regulations in New Port Richey pertaining to or controlling the daily operation of taxi cabs. The only requirements were that one entering the taxi business must obtain a business license and drivers must have a commercial driver's license. Del Pino acknowledged that he established the fares to be charged. Each driver, however, was permitted to charge less than the meter rate if he or she wished. Del Pino's principal contention at the hearing and on appeal was that he was in the business of leasing vehicles rather than operating a cab company. Anchor Cab had no rules governing the conduct of drivers except that they should be neat and clean. Del Pino determined the location of each taxi stand. Drivers could refuse to pick up fares without fear of reprimand. As long as the driver paid the daily leasing fee, Del Pino was satisfied. Drivers could be terminated without notice and were not permitted to moonlight for other companies and not permitted to use the dispatch system of other companies to obtain fares. Drivers were required to maintain a "trip sheet" documenting where they picked up and dropped off each customer, but Del Pino testified that this was required by either the Department of Transportation or the New Port Richey Sheriff's Office.
Del Pino's radio dispatcher, Arthur Lee Lewis, confirmed that each driver could refuse to pick up a fare. Lewis added that he would ask why the driver refused the fare so he would know not to refer a particular customer to that driver in the future. Describing the operation of the company, Lewis stated that a driver would pick up fares, collect money and keep whatever money remained after payment of the leasing fee and the cost of gasoline. Lewis also confirmed that drivers could charge less but not more than the established meter rate.
Claimant's testimony was largely consistent with that of Del Pino with the following exceptions. Claimant stated that he was assigned to work the day shift because Del Pino didn't need him to work the night shift. Claimant contended that Anchor Cab had a written dress code concerning the length of shorts, type of shirts and hair. Claimant said there was an unwritten rule that customers must be driven from point A to point B by the straightest route possible. Claimant also added that he was once disciplined for refusing a customer's demand to cut across private property as a short cut. Claimant could not sublease, hire assistants or work for another cab company. Claimant stated that if he refused to pick up an HRS customer he would not be permitted to take another HRS passenger.
The JCC found that claimant leased his vehicle for a 24-hour period and was free to operate anytime during that period. This finding is supported by competent, substantial evidence. The JCC concluded that under the totality of the circumstances, claimant was operating the taxi cab as an independent contractor rather than an employee of Anchor Cab. Accordingly, the JCC denied the claim for benefits.
It is axiomatic that the determination of one's status as an employee or independent contractor centers around the degree of control which the putative employer exercises over the person, the decisive question being who has the right to direct what shall be done, and how and when it shall be done. La Grande v. B & L Services, Inc., 432 So.2d 1364, 1367 (Fla. 1st DCA 1983). In La Grande, we noted that "trip sheets" were required by governmental authority (as in the present case) and opined that "[g]overnmental *44 regulations do not constitute control or supervision by the putative employer." Id. at 1366. Furthermore, in finding claimant La Grande to be an independent contractor, we noted a number of other factors identical to the present case: La Grande leased his cab at a daily rate; the cab company maintained the cab and provided liability insurance; La Grande was under no obligation to respond to the dispatcher's calls. There is, however, a fundamental distinction between La Grande and the present case. The record of this case presents uncontroverted testimony that there were no governmental regulations controlling the daily operations of Anchor Cab. Even the appellee has disavowed any desire to control the operations of its drivers by stating on appeal: "With payment of the [lease] fee, Anchor has profited and the driver is free to operate independently." Yet, inconsistent with its theory, Anchor Cab, in practice, exercised control over its drivers in perhaps the most profound manner possible  regulation of the maximum fares to be charged passengers where no governmental regulation existed to control the fare structure. If, as it contends, Anchor Cab was only interested in collecting the daily leasing fee, it should have had no interest in controlling the rates charged by its drivers. La Grande does not control the instant case because that opinion contains no mention of which party controlled the fare structure or whether the fare structure was regulated by government. By regulating the maximum rates charged by its drivers, Anchor Cab exercised extensive control as to "how" the cabbies shall perform their work. We also find it extremely significant that claimant, whom appellee claims was free to operate independently, was prohibited from working for other cab companies or accepting radio dispatches from other cab companies while operating his leased vehicle.
REVERSED and REMANDED for further consistent proceedings.
BARFIELD, MINER and MICKLE, JJ., concur.
NOTES
[1] Claimant raises two issues which we decline to address in light of our disposition of the employee/independent contractor issue.