461 S.E.2d 442

**C & H TAXI COMPANY, a West Virginia Corporation, Petitioner Below, Appellant,**

v.

**Andrew RICHARDSON, Commissioner, West Virginia Workers' Compensation Fund, Respondent Below, Appellee,**

**West Virginia Public Service Commission, Intervenor.**

**No. 22251.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 1995.

Decided June 19, 1995.

Michael T. Clifford, Clifford, Mann & Swisher, L.C., Charleston, for appellant.

Darrell V. McGraw, Jr., Attorney General, C. Terry Owen, Deputy Attorney General, Gina K. Karpinski, Assistant Attorney General, Charleston, for appellee.

Thornton Cooper, Charleston, for intervenor.

Guy R. Bucci, Janet E. James, Bucci, Chambers & Willis, L.C., Charleston, for Virginia N. Sibe, amicus curiae.

James D. Kauffelt, Kauffelt & Kauffelt, Charleston, for West Virginia Taxicab Ass'n, amicus curiae.

PER CURIAM:

This case is before this Court upon an appeal by C & H Taxi Company (hereinafter "C & H") from the final order of the Circuit Court of Kanawha County, entered on January 26, 1994. Pursuant to that order, the circuit court affirmed the May 22, 1991, decision and order of the Commissioner of the West Virginia Workers' Compensation Fund that the relationship between C & H and its

taxicab drivers is that of employer-employee for workers' compensation purposes and that, accordingly, C & H is required to pay workers' compensation premiums for the benefit of those drivers. For the reasons stated below, the final order of the Circuit Court of Kanawha County is affirmed, in part, and reversed, in part, and this case is remanded.

It should be noted that, in addition to the material submitted by C & H and the Commissioner, this Court permitted the West Virginia Public Service Commission to intervene in this case. In addition, briefs *amicus curiae* have been received from Virginia N. Sibe, Administratrix of the Estate of John L. Sibe, deceased, and from the West Virginia Taxicab Association.

I

Pursuant to chapters 24 and 24A of the *West Virginia Code,* the operation of taxicabs in this State is regulated by the West Virginia Public Service Commission. *W.Va. Code,* 24–2–1 [1991]; *W.Va.Code,* 24A–1–1 [1987]; *W.Va. Code,* 24A–1–2 [1991]. For a number of years, C & H, pursuant to a certificate of convenience and necessity issued by the Public Service Commission, has operated a taxicab company in the Kanawha County, West Virginia, area involving some seventy-five to eighty drivers.

Initially, all taxicab drivers in West Virginia were required to be employees of their respective companies. However, largely as the result of a financial decline in the taxicab industry, the West Virginia Taxicab Association petitioned the Public Service Commission for another option by which to do business. That petition resulted in the adoption by the Public Service Commission, in 1981, of P.S.C. W.Va. M.C. Form No. 55 (hereinafter "lease form no. 55"). Thereafter, through the use of lease form no. 55, many taxicab companies in West Virginia converted their employee drivers to lessees. To convert to the lease-type arrangement with regard to taxicab drivers, the use of lease form no. 55 is mandatory.

In January 1986, C & H elected to adopt lease form no. 55 with regard to each of its taxicab drivers. Although several versions of the lease appear in the record, the lease in

use during the period in question provided, *inter alia,* that C & H, the lessor, would provide to the taxicab driver, the lessee, a taxicab "in good working order," upon which would appear the lessor's insignia, and the lessor would, further, provide tires, servicing and maintenance for the vehicle and the required license tags, registration and automobile liability insurance. In addition, C & H, the lessor, agreed to provide radio dispatch service to the lessee. Under the lease, the taxicab driver, the lessee, was not required to accept the radio dispatch calls, although C & H, under Public Service Commission regulations, remained obligated to insure that the public would not be denied taxicab service. Furthermore, C & H, the lessor, agreed to lease the vehicle to the lessee at a fixed rate for various hourly periods.

Under lease form no. 55, the taxicab driver, the lessee, agreed to provide gasoline for the vehicle and, further, agreed not to sublease the vehicle. During each lease period, the vehicle was to remain "in the exclusive custody and absolute control of the Lessee." Other provisions of the lease stated:

In order to protect Lessor's good will and license, the Lessee shall keep himself/herself and said taxicab in a neat and clean condition and agrees to conduct himself/herself and operate said taxicab reasonably, prudently, courteously, and in a careful manner[.] ... Discretion in the operation of the said taxicab is vested in the Lessee, and the Lessor shall do no more than make available to Lessee telephone call service or radio service of prospective passengers.

. . . .

Lessee agrees to be bound by all the rules and regulations applicable to motor vehicles transporting passengers and property in taxicab service as prescribed by the Public Service Commission of West Virginia. Violations of said rules shall be sufficient cause for Lessor not to enter into any future taxicab rental agreements with the Lessee.

. . . .

Lessee agrees to be bound by and charge only those rates and charges ap-

proved by the Public Service Commission of West Virginia for the operation of the Leased vehicle. Failure to charge the approved rates and charges shall be sufficient cause for Lessor not to enter into any future taxicab rental agreements with the Lessee.

With regard to the latter provision, lease form no. 55 required the taxicab driver, the lessee, to submit to C & H, at the end of each lease period, a manifest which, as the Public Service Commission explained, sets forth every passenger trip consummated by the taxicab driver and the charges therefor.

In addition to the above, lease form no. 55 contains the following additional provision which has become the focus of this litigation:

*By this agreement the Lessor and Lessee acknowledge and agree that there does not exist between them the relationship of employer-employee, principal agent or master-servant, either express or implied, but that the relationship between the parties hereto is strictly Lessor–Lessee, the Lessee being an independent contractor, free from interference or control on the part of the Lessor in the operation of said taxicab, and subject only to adherence to* applicable rules and regulations of the Public Service Commission of West Virginia, [s]tatutes and ordinances of the State of West Virginia, and County or Municipality in which the Lessee operates the equipment Leased from Lessor. *Lessee further acknowledges that as an independent contractor, free from authority and control of the Lessor, he is not covered by Workmen's Compensation insurance* provided by the Lessor, and that he expressly waives any such coverage as a condition to his independent status: further, that no withholding will be made by Lessor for Federal, State or City income Taxes, or Social Security payments, or for any other taxes, and that the Lessee will be liable for payment of said taxes. If the Lessor is called upon to pay any charges assumed herein ... the Lessee will reimburse the Lessor upon demand. Lessor shall not be responsible for any injury to Lessee resulting from the use of or operation of said taxicab, and the Lessee will insure himself against such injury if he desires such insurance.[1]

(emphasis and footnote added).

C & H maintains that, under lease form no. 55, it derives income solely from the lease

---

1. Since the promulgation of the above language in lease form no. 55, the Public Service Commission has clearly retreated from the provision concerning the status of the taxicab drivers as independent contractors and the provision that such drivers are not covered by the Workers' Compensation Act.

Subsequent amendment of the provision in question of lease form no. 55 stated:

Lessor and Lessee agree that their intent is that Lessee shall be an independent contractor, in that Lessor shall have no right to control or interfere with the Lessee's operation of the taxicab during the term of the lease. As such, Lessee's operation of the taxicab shall be free from interference by Lessor, and subject only to the applicable statutes, regulations, and rules of the Public Service Commission of West Virginia, the State of West Virginia, the County or Municipality in which the Lessee operates the taxicab, and the United States. Lessee further agrees that because of the intent to create this status as an independent contractor, Lessor will not withhold any Federal, State, or City income taxes, or social security taxes or unemployment taxes with respect to payments to him, that he will be liable for and will pay all such taxes and other amounts due from him. *It is understood by the parties (Lessors–Lessees) that whether the intent to create* the status of independent contractor is successful is dependent on the terms of this Agreement and the actual facts and features of the relationship in a particular case, as distinguished from the name and form given to the relationship by the express words of this Agreement. If the status of the Lessee is found to be that of an independent contractor, then the Lessor has no responsibility to provide coverage under the Workers' Compensation Act of West Virginia for the benefit of the Lessee. If the Lessor is called upon to pay any charges assumed herein by the Lessee, Lessee will reimburse the Lessor upon demand. Lessor shall not be responsible for any injury to Lessee resulting from the use or operation of said taxicab, and the Lessee will insure himself against such injury if he desires such insurance.

(emphasis added).

Specifically, the brief of the West Virginia Public Service Commission states that the above amended language resulted from a compromise between the West Virginia Workers' Compensation Fund, the West Virginia Taxicab Association and the Public Service Commission. At the evidentiary hearing conducted before the Workers' Compensation Fund on December 13, 1990, an official of the Public Service Commission testified that the PSC has "no vested interest" in the characterization by the Workers' Compensation

payments of the taxicab drivers and not from the fares the drivers charge the passengers.

## II

By amended notice dated July 27, 1990, the Commissioner of the Workers' Compensation Fund notified all taxicab employers that, effective July 1, 1990, all drivers operating under lease form no. 55 "are presumed to be employees and are not independent contractors under the West Virginia Workers' Compensation Act." The notice further provided that "[t]he wages or other compensation of these workers must be reported to the Workers' Compensation Fund."

Pursuant to *W.Va.Code*, 23–2–17 [1990], C & H filed a formal objection to the Commissioner's determination that the lease arrangement subjected it to the payment of workers' compensation premiums for the benefit of the taxicab drivers. Thereafter, on December 13, 1990, an evidentiary hearing was conducted before the Workers' Compensation Fund. By decision dated May 22, 1991, the Commissioner determined the relationship between C & H and its taxicab drivers to be that of employer and employee for workers' compensation purposes and that C & H was properly classified for workers' compensation premium rate purposes as class L–49, industrial code 7370, Taxicab Operations. Furthermore, the Commissioner determined that C & H was required to comply with the amended notice and "report the wages or other compensation of all persons employed as taxicab drivers under Taxicab Lease Agreement, P.S.C., W.Va.M.C. Form No. 55, beginning July 1, 1990, and thereafter, and remit workers' compensation premiums thereon[.]"

The Commissioner's decision of May 22, 1991, adopted the recommended decision of

the Workers' Compensation Fund Hearing Examiner who conducted the evidentiary hearing of December 13, 1990. Determining that C & H had a "right to control" its taxicab drivers, the hearing examiner concluded that the taxicab drivers were employees rather than independent contractors. In particular, in addition to citing the provisions of lease form no. 55 in support of the recommended decision, the hearing examiner also indicated, *inter alia*, that (1) the taxicab drivers had never been able to negotiate the lease rate with C & H, (2) sixty to seventy percent of the taxicab drivers currently employed have leased taxicabs regularly for one year or longer, (3) taxicabs, generally, are made available by C & H to its drivers upon the basis of seniority [2] and (4) in the event of complaints by passengers of overcharging, C & H requires the taxicab driver to pay the money back to the passenger. The hearing examiner concluded:

> The petitioner is not in the business of simply leasing automobiles with no further interest in their operation as taxicabs. Certainly, insofar as carrying on the business of providing a taxi service, the taxicab drivers' participation is an integral part of the petitioner's business. Therefore, based on review of the evidence adduced in this matter, and in accordance with the Findings of Fact and Conclusions of Law set forth herein, it is the finding and decision of this Hearing Examiner that the petitioner has failed to overcome the legally valid presumption that its taxicab drivers are employees and not independent contractors[.]

Pursuant to *W.Va.Code*, 23–2–17 [1990], and *W.Va.Code*, 29A–5–1 [1964], *et seq.*, C & H appealed from the Workers' Compensation Fund to the Circuit Court of Kanawha County. By final order entered on January 26,

---

Fund of the relationship between C & H and its taxicab drivers.

2. During the hearing of December 13, 1990, an officer of C & H testified:

> A. The ones that have been there the longest, most of them, you know, they decide basically what time frame they want and they pick it out. When they turn in the thing, they check one of these periods here and that decides which one that they're going to take.

> Q. Is that selected on a first come, first-served basis?
> A. We do that based upon the customers [drivers] that we have that we've been doing business with the longest. Basically they've been there the longest. They turn their signed leases in and if there's a conflict as far as there's just too many leases for one particular slot, then the fellow that's been there the longest doing business with us, we give him a car in that slot.

1994, the circuit court affirmed the Commissioner and concluded:

> C & H's right to terminate or not to renew the lease, coupled with C & H's ownership and maintenance of the taxicabs used by the drivers are determinative factors in this Court's conclusion.
>
> C & H's argument is that any control they exercise is government mandated by C & H's Public Service Commission certificate. This argument is pretextual. The certificate itself presumes supervision by C & H. There is a presumed right to control and C & H has not shown that supervision is entirely absent.

In its appeal to this Court, the principal argument of C & H is that its use of lease form no. 55, the provisions of which were promulgated by the West Virginia Public Service Commission, does not constitute a "right to control" by C & H over its taxicab drivers sufficient to create an employer and employee relationship for workers' compensation purposes. Furthermore, C & H argues, a determination that taxicab drivers operating under lease form no. 55 are not independent contractors would have a deleterious effect upon West Virginia taxicab companies, including C & H, in view of an economic decline in the taxicab industry.

## III

At the outset, we note that this litigation progressed through the Circuit Court of Kanawha County and upon appeal to this Court under the provisions of the West Virginia Administrative Procedures Act. *W.Va.Code*, 23–2–17 [1990]; *W.Va. Code*, 29A–5–1 [1964], *et seq.* As we stated in syllabus point 2 of *Shepherdstown V.F.D. v. W. Va. Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983):

> Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because

the administrative findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'

*See also* syl. pt. 1, *Smith v. Workers' Compensation Fund*, 190 W.Va. 573, 439 S.E.2d 438 (1993); syl. pt. 1, *CDS, Inc. v. Camper*, 190 W.Va. 390, 438 S.E.2d 570 (1993); syl. pt. 1, *Smith v. Bechtold*, 190 W.Va. 315, 438 S.E.2d 347 (1993). Moreover, we have recently recognized that rulings upon questions of law are reviewed *de novo*. *Stephen L.H. v. Sherry L.H.*, No. 22084, — W.Va. —, — n. 19, — S.E.2d —, — n. 19 [1995 WL 87940] (Mar. 6, 1995); *State v. Honaker*, 193 W.Va. 51, 56, 454 S.E.2d 96, 101 (1994); *Adkins v. Gatson*, 192 W.Va. 561, 565, 453 S.E.2d 395, 399 (1994); *State v. Stuart*, 192 W.Va. 428, 433, 452 S.E.2d 886, 891 (1994); syl. pt. 3, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

General definitions of "employer" and "employee" are found in this State's workers' compensation statutes. In *W.Va.Code*, 23–2–1 [1991], it is stated that "all persons, firms, associations and corporations regularly employing another person or persons for the purpose of carrying on any form of industry, service or business in this state, are employers ... and are hereby required to subscribe to and pay premiums into the workers' compensation fund for the protection of their employees[.]" Likewise, *W.Va.Code*, 23–2–1a [1991], states that "[e]mployees subject to this chapter are all persons in the service of employers and employed by them for the purpose of carrying on the industry, business, service or work in which they are engaged[.]"

More helpful, however, is this Court's analysis in *Myers v. Workmen's Compensation Commissioner*, 150 W.Va. 563, 148 S.E.2d 664 (1966), relied upon by the Commissioner and by the Circuit Court of Kanawha Coun-

ty. In *Myers,* a plumbing company engaged the claimant to do some excavation work at a construction site in Pt. Pleasant, West Virginia. The work was expected to be completed in a few hours, and the claimant, providing his own equipment, was paid upon an hourly basis. The plumbing company inspected the ongoing excavation work from time to time. The claimant was injured and sought workers' compensation benefits.

■ The analysis in *Myers* begins with the recognition in syllabus point 1 that "[t]o ascertain whether a workman is an employee or an independent contractor each case must be resolved on its own facts and ordinarily no one feature of the relationship is controlling, but all must be considered together." Moreover, syllabus point 2 states that "[i]n determining whether a workman is an employee or an independent contractor, the controlling factor is whether the hiring party retains the right to control and supervise the work to be done." This Court, in *Myers,* concluded that the claimant was an employee of the plumbing company, rather than an independent contractor, for purposes of workers' compensation. In so holding, it was determined that the claimant could have been discharged if the work had not been satisfactory, which "in itself is an indication of an employer-employee relationship." 150 W.Va. at 568, 148 S.E.2d at 667. *Myers* concludes with the following statement, reflected in syllabus point 4:

> In determining whether one is an employee or an independent contractor within the meaning of the workmen's compensation act, the act must be given a liberal construction in favor of the workman and any doubt is to be resolved in favor of his status as an employee, rather than an independent contractor.

*See also* syl. pts. 1–3, *Barkley v. Workmen's Compensation Commissioner,* 164 W.Va. 777, 266 S.E.2d 456 (1980); *Maynard v. Kenova Chemical,* 626 F.2d 359, 362 (4th Cir. 1980); *Kirby v. Union Carbide,* 373 F.2d 590, 593 (4th Cir.1967).

In cases from other jurisdictions concerning whether taxicab companies, such as C & H, are subject to workers' compensation statutes, employer-employee relationships are often found. In *Yellow Cab v. Industrial Commission,* 124 Ill.App.3d 644, 80 Ill.Dec. 96, 464 N.E.2d 1079 (1984), the sole issue was whether an injured claimant, a lease cab driver, was an employee or independent contractor of the taxicab company for purposes of workers' compensation. The claimant leased a cab upon a twenty-four hour basis, and the lease agreement disclaimed the parties' relationship as one of employer and employee. As in this case, the claimant was not required to answer radio calls, but if he accepted one, he was expected to follow through with it. As a lease driver, the claimant was not issued a paycheck or given any withholding tax forms. In upholding a finding that the claimant was an employee of the taxicab company for workers' compensation purposes, the Court, in *Yellow Cab,* noted:

> The cabs, whether driven by lease or commission drivers, are uniform in appearance and have the company's name and telephone number on them. Respondent [company] had the right to discharge the claimant. It could terminate or refuse to renew the claimant's 24 hour lease and could refuse to assign claimant to a cab for various reasons. Claimant was not permitted to sublease a cab, was instructed to purchase his gas at the company garage, and was required to report mileage at the end of each lease period. Respondent derives goodwill from the public presence of both commissioned and leased cabs that are well maintained.... Thus, despite the lease agreement's employment relationship disclaimer, the record clearly indicates that respondent's interest in its cabs did not cease with their leasing, but extended to their operation.

80 Ill.Dec. at 98–99, 464 N.E.2d at 1081–82.

The Illinois Court in the above case addressed this area of the law again in *Yellow Cab v. Industrial Commission,* 238 Ill. App.3d 650, 179 Ill.Dec. 691, 606 N.E.2d 523 (1992). The latter case involved a daily lease form which provided that the taxicab company and the driver did not have an employer-employee relationship, and that the taxicab company did not have the right to control or supervise the driver in the use of the vehicle. The Illinois Court, nevertheless, upheld a

finding that the taxicab driver, who had been fatally shot while in his cab, had been an employee of the company for workers' compensation purposes. The Court was influenced by such factors as the company's right to terminate the lease "with or without cause" and the driver's duty to keep the taxicab company's name upon the vehicle.

A taxicab driver operating a "lease-to-purchase vehicle" was found to be an employee of the company for workers' compensation purposes in *Central Management Company v. Industrial Commission,* 162 Ariz. 187, 781 P.2d 1374 (1989). In that case, the Court of Appeals of Arizona stated:

> Significantly, operating taxi cabs was the usual and regular course of CMC's business. CMC owned four different taxi cab companies and dispatch operations, as well as the radio equipment in each cab. Its business was conducted mostly through these dispatch operations. CMC was not simply leasing vehicles which coincidentally were used as taxi cabs. It was in the business of operating, maintaining, controlling, and presenting to the public a fleet of cabs for public transportation. The claimant's work was not only an integral part of that business—it was the essential core of CMC's business.

162 Ariz. at 190–191, 781 P.2d at 1377–78.

*See also Shinuald v. Mound City Yellow Cab,* 666 S.W.2d 846 (Mo.Ct.App.1984) (taxicab company subject to workers' compensation claim, where driver's work was a "regular and continuous" part of company's business and "not an independent business through which it would be feasible to channel the cost of work-connected injury"); *Commissioners of the State Insurance Fund v. Lindenhurst Green & White,* 101 A.D.2d 730, 475 N.Y.S.2d 42 (1984) (IRS ruling that taxicab drivers are not employees of company is not binding in the context of workers' compensation); *Ziegler v. Fillmore Car Service,* 83 A.D.2d 692, 442 N.Y.S.2d 276 (1981) (employer-employee relationship found for workers' compensation purposes between cab driver and radio dispatching service, where dispatcher "basically controlled the activities and work" of the driver); *Morgan Cab v. Industrial Commission,* 60 Ill.2d 92, 324

N.E.2d 425 (1975) (workers' compensation claim upheld, where taxicab company operated a fleet of cabs for public use and "was not in the business of simply leasing vehicles with no interest in their operation as taxis"); *Golosh v. Cherokee Cab,* 226 Ga. 636, 176 S.E.2d 925 (1970) (cab driver found to be employee, rather than independent contractor, where, although driver could "evade supervision," the company could discharge the driver for failing to follow instructions); *but see Bowdoin v. Anchor Cab,* 643 So.2d 42 (Fla.Dist.Ct.App. (1994)) (taxicab drivers under daily lease held employees for workers' compensation purposes, where company controlled the passenger fare structure); *La Grande v. B & L Services,* 432 So.2d 1364 (Fla.Dist.Ct.App. (1983)) (government regulation in the form of required "trip sheets" and dress code did not constitute control or supervision by the taxicab company over its lessee driver).

▮ In the case *sub judice,* a review of lease form no. 55 amply clarifies a number of features demonstrating that the relationship between C & H and its taxicab drivers, for purposes of the West Virginia workers' compensation statutes, was one of employer-employee, within the analysis of this Court in *Myers, supra.* Under the lease, C & H had a right to control and supervise the work of its taxicab drivers, the disclaimers of the lease concerning the status of the drivers notwithstanding. C & H, for example, agreed to provide the equipment, i.e. vehicles, to the taxicab drivers and agreed to service the vehicles, while, in return, the taxicab drivers agreed to maintain a favorable appearance and agreed to operate the vehicles in a careful manner. Importantly, C & H could terminate the relationship for certain violations by the taxicab drivers. Those features of lease form no. 55 have been generally recognized in the above-cited authorities as indicia of an employer-employee relationship, for workers' compensation purposes.

In this case, however, C & H asserts that its use of lease form no. 55, the provisions of which were promulgated by the West Virginia Public Service Commission and are mandatory, does not constitute a right to control

by C & H over its taxicab drivers sufficient to create an employer-employee relationship for workers' compensation purposes. We find that assertion unpersuasive.

West Virginia taxicab companies having an interest in the lease-type arrangement have had considerable input with regard to lease form no. 55. It was promulgated by the West Virginia Public Service Commission upon the petition of the West Virginia Taxicab Association, and that Association was involved in its subsequent amendment. *See* n. 1, *supra.* Moreover, C & H obtained a modification of lease form no. 55 with regard to the lease rate schedule concerning its drivers. Although the product of a governmental agency, the purpose of lease form no. 55 is to accommodate the State taxicab industry by providing that industry with another option by which to do business. It cannot simply be said to be an example of burdensome governmental regulatory power especially in view of the industry's significant input concerning the development of the provisions of the lease.

Moreover, day-to-day operations under lease form no. 55 indicate an employer-employee relationship for workers' compensation purposes. Testimony adduced at the December 13, 1990, evidentiary hearing indicated that, in a year's time, C & H would execute about 20,000 leases with its taxicab drivers, or approximately 300 leases per driver, all with regard to time frames measured largely in hours. Those facts, coupled with the fact that sixty to seventy percent of the taxicab drivers currently employed have leased taxicabs regularly for one year or longer, suggest either an employer-employee relationship, or a very tenuous independent contractor arrangement. That C & H tends to make some vehicles available to drivers who have associated with C & H the longest, *see* n. 2, *supra,* and that C & H makes drivers pay money back to passengers in the event of overcharging, *a fortiori,* demonstrates an employer-employee relationship for workers' compensation purposes.

Driving a taxicab, by its very nature, does not lend itself to constant supervision. However, the record in this case supports the conclusion of the hearing examiner that C &

H "is not in the business of simply leasing automobiles with no further interest in their operation as taxicabs." Consequently, inasmuch as the record contains facts demonstrating that the relationship between C & H and its taxicab drivers is that of employer-employee for workers' compensation purposes, we affirm the final order of the Circuit Court of Kanawha County.

In so holding, this Court is aware of the economic hardships currently facing the taxicab industry in West Virginia. Factors other than workers' compensation responsibility, however, such as competing forms of transportation, may have made that business more difficult. Nevertheless, this Court is also aware of the statistically demonstrated danger associated with driving a taxicab. Workers' compensation coverage, as well as the lease-type arrangement, may ultimately prove to be a stabilizing factor.

Finally, we recognize that, if the decision of the Circuit Court of Kanawha County is affirmed in its entirety, then, pursuant to the notice of the Commissioner, the liability of C & H, and perhaps other taxicab companies in West Virginia, for workers' compensation premiums would commence as of July 1, 1990, nearly five years ago. This case has been in litigation since that time.

Although the record is clear that the West Virginia Public Service Commission never intended to erode or interfere with the authority of the Workers' Compensation Fund in this area, *see* n. 1, *supra,* the provisions of lease form no. 55, and its prior and subsequent history have resulted in a degree of confusion, though well intended by the Public Service Commission and adhered to in good faith by the taxicab industry in this State. In fact, the Workers' Compensation Fund itself participated in the amendment of lease form no. 55, and the amended language is ambiguous with respect to the issues of driver status and workers' compensation coverage. The confusion and ambiguity surrounding the lease have masked the foreshadowing of our ruling today. It is undisputed that C & H has acted in good faith and has, while adhering to all applicable regulations, legitimately asserted that its taxicab drivers were independent contractors.

Accordingly, we reverse that part of the decision of the Circuit Court of Kanawha County which upholds July 1, 1990, as the date of the liability of C & H for workers' compensation premiums. Moreover, this question consisting of a mixture of law and fact, our review of this matter is plenary and *de novo*, *Adkins*, *supra*, 453 S.E.2d at 400, syl. pt. 3, *McCorkle*, *supra*. Upon all of the circumstances of this case, therefore, the determination that the relationship between C & H and its taxicab drivers, under lease form no. 55, is that of employer-employee for workers' compensation purposes shall be effective from the date of the mandate of this Court in this case. The taxicab drivers of C & H are independent contractors for workers' compensation purposes prior to the date of the mandate, and this case is remanded to the Circuit Court of Kanawha County for proceedings consistent with this opinion. It is recommended that the parties consider a new date for the commencement of workers' compensation premium payments, subsequent to the mandate in this case, and, in addition, whether a need exists to further amend lease form no. 55.

Upon all of the above, the final order of the Circuit Court of Kanawha County, West Virginia, entered on January 26, 1994, is affirmed, in part, and reversed, in part, and this case is remanded to the Circuit Court of Kanawha County.

Affirmed, in part, reversed, in part, and remanded.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.

NEELY, Retired J., participated in consideration and decision of case.